[No. 67448-5. En Banc.]
Argued September 14, 1999. Decided July 27, 2000.

SUNSIRAE TUNSTALL, ET AL., *Respondents*, v. TERESA BERGESON, *as Superintendent of Public Instruction*, ET AL., *Appellants*, SHELTON SCHOOL DISTRICT NO. 309, ET AL., *Respondents*.

204

*Christine O. Gregoire, Attorney General*, and *Lisa L. Sutton, Heather Klein*, and *Thomas J. Young, Assistants*, for appellants.

*Patricia J. Arthur* (of *Columbia Legal Services*); *David C. Fathi*; *Patricia H. Wagner* and *Angela M. Niemann* (of *Heller Ehrman White & McAuliffe*); *William A. Coats* (of *Vandeberg Johnson & Coats*); and *Michael A. Patterson, Philip B. Grennan,* and *Karen A. Kalzer* (of *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.*), for respondents.

*Andrea D. Orth* on behalf of American Civil Liberties Union of Washington; Arc of Washington State; The Children's Alliance; The Juvenile Law Center; Learning Disabilities Association of Washington; Northwest Women's Law Center; People First of Washington; The Sentencing Project; TeamChild; Washington Coalition of Citizens with Disabilities; Washington State Catholic Conference; Washington State Special Education Coalition; The Faculty of Western Washington University's Woodring College of Education, Department of Special Education; The Youth Law Center; Osa Coffey, Ph.D.; Barry Krisberg, Ph.D.; Peter E. Leone, Ph.D.; and Robert B. Rutherford, Jr., Ph.D, amici curiae.

IRELAND, J. — This case comes to the court on direct review from the trial court's summary judgment rulings. Plaintiffs (hereinafter "inmates"), a class of persons incarcerated in Washington State prisons who are either under 21 years of age, or disabled and under 22 years of age, brought suit concerning their right to education against Teresa Bergeson, the Washington State Superintendent of Public Instruction, Joseph Lehman, the Secretary of Washington's Department of Corrections (together and hereinafter referred to as the "State"), and the school districts in which the prisons are located.

We hold that individuals under age 18 incarcerated in adult Washington State Department of Correction (DOC) facilities have a constitutional right to public education and

that their constitutional right is satisfied by chapter 28A.193 RCW. We also hold, however, that individuals over age 18 incarcerated in DOC facilities do not have a statutory or constitutional right to public education. Furthermore, we hold that the State is not required under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1436, or § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), to provide special education services to DOC inmates between 18 and 22 years of age. Finally, we hold that the school districts may contract to provide educational services to individuals over age 18 incarcerated in DOC facilities, but are not statutorily or constitutionally obligated to do so. We reserve the issue of whether there is a constitutional right to *special* education for those between 18 and 22 until we have a case where the record and briefing are adequately developed.

## I

## BACKGROUND

A. Stipulated Facts

As of April 1998, there were approximately 100 offenders under the age of 18 and 1,027 offenders under the age of 21 incarcerated in DOC facilities.[1] The number of juvenile inmates under the age of 18 is expected to rise during the next several years due to the new mandatory declination provisions passed by the Legislature in 1997. Clerk's Papers (CP) at 1678 (citing LAWS OF 1997, ch. 338, § 7 (E3SHB 3900)). Of the 1,027 offenders under the age of 21, approximately 209 were believed to have either a high school diploma or a general equivalency diploma (GED).

Prior to the passage of chapter 28A.193 RCW, the Office of the Superintendent of Public Instruction (OSPI) had no responsibility for educational programs in any adult prison. DOC, however, provided several educational opportunities to inmates, largely through contracts with local community

---

[1] The trial court's summary judgment rulings were based on stipulated facts.

colleges. DOC education programs included courses in adult basic education, GED preparation, English as a second language, vocational skills training, crime related programs, and job readiness training.

In 1998, the Legislature passed the Engrossed Substitute Senate Bill 6600. LAWS OF 1998, ch. 244 (codified at chapter 28A.193 RCW). This statute provides for the education of juveniles incarcerated in adult prisons. RCW 28A.193.005. RCW 28A.193.020-.030 requires OSPI to solicit proposals from educational entities to provide education to inmates under the age of 18 in Washington State prisons.

In accordance with chapter 28A.193 RCW, DOC and OSPI contracted with two school districts[2] to provide educational services for the 1998-99 school year at the two DOC facilities in which the inmates under 18 are located.

B. Claims

Inmates brought this class action suit against the State and those school districts where DOC facilities are located. Inmates' class was certified to include:

> All individuals who are now, or who will in the future be, committed to the custody of the Washington Department of Corrections, who are allegedly denied access to *basic or special education* during that custody, and who are, during that custody, *under the age of 21, or disabled and under the age of 22.*

CP at 203-04 (emphasis added).

The inmates alleged that the State's failure to provide them with basic and special education services violated article IX of the Washington Constitution; the basic education act, chapter 28A.150 RCW; the special education act, chapter 28A.155 RCW; the federal Individuals with Dis-

---

[2] Around June of 1999, one of the school districts did not renew its contract. *See* Ex. 1, at 2 (district's resolution to not renew educational service provider contract), Mot. to Supplement the R., *Tunstall v. Bergeson*, No. 67448-5 (Wash. Supreme Ct. June 3, 1999). In September, the district was replaced by another educational service provider. *See* Ex. 2, at 2 (agreement between DOC and Special Education Services), Mot. to Supplement the R., *Tunstall v. Bergeson*, No. 67448-5 (Wash. Supreme Ct. Sept. 13, 1999).

abilities Education Act (IDEA), 20 U.S.C. §§ 1400-1436, and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a); and constitutional due process and equal protection. Furthermore, the inmates alleged that recently enacted chapter 28A.193 RCW violates article IX.

C. Trial Court Decision

On stipulated facts and cross motions for summary judgment, the trial court granted summary judgment in favor of the inmates on their claims under the Washington Constitution and the basic education act. The trial court also invalidated chapter 28A.193 RCW as unconstitutional because it impermissibly limited the availability of basic education to inmates under the age of 18 and failed to provide for special educational opportunities. The trial court, however, held that the statutory and constitutional obligation to provide educational services to persons incarcerated in Washington prisons ran only to the State and dismissed the school districts. The trial court also dismissed all of the inmates' federal claims.

On appeal, as appellants and cross-respondents, the State appeals the trial court's rulings regarding the inmates' state law claims. The inmates, as respondents and cross-appellants, challenge the trial court's dismissal of the school districts and the dismissal of their federal claims. Finally, the school districts, as cross-respondents, defend their dismissal from the case. This court stayed the trial court's orders pending the outcome of this appeal.

D. Standard of Review

■ In reviewing an order of summary judgment, this court engages in the same inquiry as the trial court. *E.g.*, *Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998). Summary judgment is upheld if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *E.g.*, *Green v. A.P.C. (American Pharm. Co.)*, 136 Wn.2d 87, 94, 960 P.2d 912 (1998) (citing, inter alia, CR 56(c)). Because this case is reviewed on stipulated facts, the issues are solely questions of law and

are reviewed de novo. *See DiBlasi v. City of Seattle*, 136 Wn.2d 865, 873, 969 P.2d 10 (1998) (citing case).

Where an issue may be resolved on statutory grounds, the court will avoid deciding the issue on constitutional grounds. *Senear v. Daily Journal-Am.*, 97 Wn.2d 148, 152, 641 P.2d 1180 (1982) (citing case). Therefore, we first examine whether the inmate class is entitled to basic and special education under state statutes. Second, we review the inmates' claim that they are entitled to basic and special education under the state constitution. Third, we consider the inmates' claims that the education programs for juvenile inmates act, chapter 28A.193 RCW, violates Washington's equal protection clause. Fourth, we analyze the inmates' claims under the federal statutes. Finally, we determine what obligation, if any, is imposed upon school districts to provide basic or special education to inmates.

II

## THE INMATES' STATUTORY RIGHT TO BASIC AND SPECIAL EDUCATION

When the relevant statutory provisions are properly read together and as a whole, it is clear the Legislature did not intend that the basic and special education acts apply to individuals incarcerated in DOC prisons. Consequently, we hold that the basic education act and the special education act do not apply to the inmate class.

### A. The Basic Education Act, Chapter 28A.150 RCW

The inmates first argue that the plain language of the basic education act clearly "establishes an education system available to *all* students aged 5 through 21, and excluding none." Response Br. of Resp'ts at 14 (citing RCW 28A.150.220(5)) (footnote omitted).[3] Under the inmates'

---

[3] The relevant portion of RCW 28A.150.220(5) states that:

Each school district's kindergarten through twelfth grade basic educational program shall be accessible to all students who are five years of age . . . and less than twenty-one years of age . . . .

theory, because children incarcerated in adult prisons are not specifically exempted from the basic education act, they are covered by the act, and are thus entitled to the same education offered to all other children in Washington. We disagree.

■■ While the basic education act does not *explicitly* exclude youths incarcerated in adult facilities, the inquiry does not end there. A fundamental rule of statutory construction is that the court must interpret legislation consistently with its stated goals. *Weyerhaeuser Co. v. Tri*, 117 Wn.2d 128, 140, 814 P.2d 629 (1991). Another well-established principle of statutory construction provides that apparently conflicting statutes must be reconciled to give effect to each of them. *E.g., State v. Fagalde*, 85 Wn.2d 730, 736, 539 P.2d 86 (1975); *see also Fray v. Spokane County*, 134 Wn.2d 637, 648, 952 P.2d 601 (1998) (courts avoid construing statutes in way that renders any statutory language "superfluous") (citing case).

■ To resolve apparent conflicts between statutes, courts generally give preference to the more specific and more recently enacted statute. *See In re Estate of Little*, 106 Wn.2d 269, 283, 721 P.2d 950 (1986) (more specific statute) (citing cases); *Morris v. Blaker*, 118 Wn.2d 133, 147, 821 P.2d 482 (1992).[4] Along these same lines, courts also consider "the sequence of all statutes relating to the same subject matter." *Department of Labor & Indus. v. Estate of MacMillan*, 117 Wn.2d 222, 229, 814 P.2d 194 (1991) (citation omitted). Based on these principles of statutory interpretation, we examine the Legislature's statutory scheme regarding education to determine whether the basic education act applies to the inmate class.

■ The basic education act, originally enacted in 1977, sets up a general program of education that does not specifically address the educational needs of DOC inmates.

---

[4] *Accord State v. Stackhouse*, 88 Wn. App. 963, 968, 947 P.2d 777 (1997) (citing case).

Chapter 28A.193 RCW, on the other hand, was enacted in 1998 with the intent "to provide for the operation of education programs for the *department of corrections' juvenile inmates.*" RCW 28A.193.005 (emphasis added). Under chapter 28A.193 RCW, individuals up to, and potentially including, age 18 who are incarcerated in DOC facilities may participate in DOC education programs. RCW 28A.193.030(3)-(4); *see also* RCW 72.09.460(2).[5] Furthermore, the compulsory school attendance and admission law, chapter 28A.225 RCW, was amended in 1998 to specifically *exempt* individuals who are incarcerated in adult correctional facilities from mandatory school attendance. LAWS OF 1998, ch. 244, § 14; RCW 28A.225.010(1)(d).[6]

Applying the previously discussed rules of interpretation, we hold that chapters 28A.193 and 72.09 RCW, not the basic education act, apply to the inmate class. First, applying the basic education act to DOC inmates would render chapter 28A.193 RCW and portions of chapter 72.09 RCW superfluous. *See Fray*, 134 Wn.2d at 648. Second, chapters 28A.193 and 72.09 are the more recent and far more specific statutes regarding inmate education, and thus should be given preference. *See Little*, 106 Wn.2d at 283; *Blaker*, 118 Wn.2d at 147.

---

[5] The relevant portion of RCW 72.09.460(2), as amended in 1998, states that:

> The [DOC] shall provide access to a program of education to all offenders who are *under the age of eighteen* and who have not met high school graduation or general equivalency diploma requirements *in accordance with chapter 28A.193 RCW.*

(Emphasis added.) *See also* LAWS OF 1998, ch. 244, § 10.

[6] The relevant portion of RCW 28A.225.010(1)(d) states:

> All parents in this state of any child eight years of age and under eighteen years of age shall cause such child to attend the public school of the district in which the child resides and such child shall have the responsibility to and therefore shall attend for the full time when such school may be in session *unless*:
>
> . . . .
>
> (d) The school district superintendent of the district in which the child resides shall have excused such child from attendance because the child is . . . *incarcerated in an adult correctional facility* . . . .

(Emphasis added.)

Finally, as stipulated to by the parties, the new mandatory declination provisions passed in 1997 were expected to significantly increase the number of juveniles under 18 incarcerated in DOC facilities. Relying upon the sequence in which these statutes were enacted, it is reasonable to conclude that the Legislature intended the more recent statutes and amendments to address an unmet need—the education of juvenile DOC inmates. *See MacMillan,* 117 Wn.2d at 229.

In addition to their statutory construction arguments, the inmates contend that *Tommy P.,* which held that the basic education act applies to children incarcerated in juvenile detention facilities, mandates application of the basic education act to the inmate class. Response Br. of Resp'ts at 14-15 (citing *Tommy P. v. Board of County Comm'rs,* 97 Wn.2d 385, 391-93, 645 P.2d 697 (1982)).[7] The inmates argue that *Tommy P.* stands for the proposition that children do not lose their rights to an education under the basic education act simply because they are incarcerated. Response Br. of Resp'ts at 14-15 (citing *Tommy P.,* 97 Wn.2d at 391-93). We disagree, noting at least three major flaws in the inmates' arguments.

First, contrary to inmates' assertions, the holding in *Tommy P.* does not rest on the *basic education act*; rather, it is dependent upon the compulsory attendance law's applicability to juvenile detainees. Chapter 28A.27 RCW (recodified and amended by chapter 28A.225 RCW). This court specifically held: "the *compulsory education law* requires the provision of a program of education in juvenile detention centers." *Tommy P.,* 97 Wn.2d at 398 (emphasis added).[8]

Second, as previously stated, the compulsory school at-

---

[7] Specifically, this court held that, "under the provisions of RCW Titles 13 and 28A, juveniles of school age have a right to education while detained in juvenile detention centers, both before and after adjudication and disposition." *Tommy P.,* 97 Wn.2d at 386.

[8] In addition to ignoring the other bases upon which the majority distinguishes *Tommy P.,* the dissent contradicts itself by correctly recognizing that *Tommy P.* "refrained" from considering the constitutional question, but then arguing that there are "[constitutional] principles underlying *Tommy P.* [that] should not be so easily abandoned." Dissent at 238. A court's decision is not constitutional in

tendance and admission law, upon which *Tommy P.* was based, was amended in 1998 to specifically *exclude* individuals "incarcerated in an adult correctional facility." RCW 28A.225.010(1)(d); *see also Tommy P.*, 97 Wn.2d at 394-98 (court held that, absent specific exemption, compulsory school attendance law applied to juveniles in detention facilities). Finally, *Tommy P.* involved offenders incarcerated in juvenile facilities, not youths who were declined to adult court or incarcerated in adult facilities. For these reasons we find *Tommy P.* distinguishable.

## B. The Special Education Act, Chapter 28A.155 RCW

The analysis and arguments regarding whether the special education act, chapter 28A.155 RCW, applies to the inmate class parallels those regarding the basic education act above. Like the basic education act, the special education act is stated in broad terms and does not specifically address the education of juveniles in DOC facilities. The special education act's purpose is "to ensure that *all children with disabilities* as defined in RCW 28A.155.020 shall have the opportunity for an appropriate education at public expense as guaranteed to them by the Constitution of this state." RCW 28A.155.010 (emphasis added). "Children with disabilities" includes individuals between the ages of 3 and 22[9] who are:

in school or out of school who are temporarily or permanently retarded in normal educational processes by reason of physical or mental disability, or by reason of emotional maladjustment, or by reason of other disability, and those children who have specific learning and language disabilities resulting from per-

---

nature where the court explicitly avoided basing its decision on constitutional principles and relied on statutory grounds.

[9] Regarding age, RCW 28A.155.020 specifically states:

The superintendent of public instruction shall require each school district in the state to insure an appropriate educational opportunity for all children with disabilities between the ages of three and twenty-one, but when the twenty-first birthday occurs during the school year, the educational program may be continued until the end of that school year.

ceptual-motor disabilities, including problems in visual and auditory perception and integration.

RCW 28A.155.020.

■ In addition to not specifically *including* DOC inmates, the special education act is reasonably read as actually *excluding* them. The special education act's section titled "Superintendent of public instruction's duty and authority" states that the superintendent is, among other things, required to:

> Promulgate such rules as are necessary to implement the several provisions of [the basic and special education acts] and to ensure educational opportunities *within the common school system* for all children with disabilities who are not institutionalized.

RCW 28A.155.090(7) (emphasis added). When reasonably read, this provision excludes from the special education act children with disabilities *not* "within the common school system." If the superintendent is not responsible for ensuring the "educational opportunities" of a certain group of individuals, it is reasonable to conclude that the group is not covered by the act. Otherwise, we would have the anomalous situation where the special education act applies to a group of individuals, but instructs the superintendent, the individual in charge of implementing the act, that he or she is not responsible for educating these same individuals. Finding that the special education act creates an exception for individuals not "within the common school system," we must now determine whether the inmates fall under that exception.

■ ■ The basic education act defines the "common school system" as that term is used in Title 28A RCW. *See* RCW 28A.150.020. As we have already held, individuals incarcerated in DOC facilities are not covered by the basic education act. Thus, by definition the inmate class is *outside* "the common school system." Relying on the rule of statutory construction that when similar words are used in different parts of a statute the meaning is presumed to be the same throughout, we find that the special education

act's "common school system" is the same as that in the basic education act. *See State v. Akin*, 77 Wn. App. 575, 580-81, 892 P.2d 774 (1995) (citing *DeGrief v. City of Seattle*, 50 Wn.2d 1, 11, 297 P.2d 940 (1956)). Consequently, we are constrained to find that the inmates are not "*within* the common school system" under the special education act, and thus fall under an exception to the act.

Based on the special education act's silence regarding DOC inmates and its exclusion of students not "within the common school system," we hold that the special education act does not apply to the inmate class. Because we do not favorably resolve the inmates' claims to basic or special education on statutory grounds, we next analyze the inmates' constitutional rights to basic and special education under article IX of the Washington Constitution. Within this next section we also determine whether chapter 28A.193 RCW is constitutional under article IX.

## III

## INMATES' STATE CONSTITUTIONAL RIGHT TO BASIC AND SPECIAL EDUCATION UNDER ARTICLE IX

In resolving the issue of whether article IX requires the State to provide basic and special education to persons up to age 21 or 22 who are incarcerated in adult DOC prisons, we must first define the term "children" for purposes of article IX. We hold that "children" under article IX includes individuals up to age 18, including those children incarcerated in adult DOC facilities. Furthermore, we hold that chapter 28A.193 RCW, by establishing an educational program tailored for the special needs of juvenile DOC inmates, satisfies article IX.

### A. "Children" under Article IX

Regarding the definition of "children" under article IX, our constitution provides little guidance, leaving the term

undefined.[10] Consequently, we must look elsewhere for guidance.

At trial, the court held that the basic education act has defined "children" for the purposes of education, including article IX, as those persons up to age 22. The trial court noted that the Legislature "retains the right to restrict the age definition for children for educational purposes and may change their definition as they see fit." CP at 2222. Accordingly, the trial court concluded that as long as the Legislature defines "children" as persons up to age 22, the State's constitutional duty to provide educational services runs to persons up to age 22 as well. CP at 2222, 2224. We disagree and find the trial court's reliance on the basic education act problematic.

First, the basic education act does not actually *define* the term "children" for purposes of article IX. The Legislature merely identifies the age group to which the statute applies. Furthermore, the statute does not actually use the term "children" as is found in article IX. *See* RCW 28A.150.220(5) (the basic education act "shall be accessible to all *students* who are five years of age . . . and less than twenty-one years of age . . . .") (emphasis added).

Second, although the legislation declares that the basic education act *complies* with article IX, it does not declare education to age 21 or 22 is constitutionally *required. See* RCW 28A.150.200.[11] This is clearly demonstrated by the Legislature's subsequent enactment of chapter 28A.193 RCW. As with the basic education act, the Legislature found that chapter 28A.193 RCW satisfied its constitutional duty to provide an education under article IX. *See* RCW

---

[10] "It is the paramount duty of the state to make ample provision for the education of all children residing within its borders, without distinction or preference on account of race, color, caste, or sex." WASH. CONST. art. IX, § 1.

[11] "The requirements of the Basic Education Act are deemed by the legislature to comply with the requirements of Article IX, section 1 of the state Constitution . . . and are adopted pursuant to Article IX, section 2 of the state Constitution . . . ." RCW 28A.150.200.

28A.193.005.[12] However, unlike the basic education act, the Legislature found that providing for the education of DOC inmates up to age 18, not 21, satisfied its constitutional duty. RCW 28A.193.030(3)-(4); RCW 72.09.460(2). We presume that if the Legislature actually intended to create a constitutional definition of "children" in the basic education act, it would have been constrained by that definition when it enacted chapter 28A.193 RCW. *See State v. Fagalde*, 85 Wn.2d 730, 736, 539 P.2d 86 (1975) (courts presume Legislature intended consistency between statutes).

▉ Finally, even if the Legislature had explicitly defined the term "children" under article IX, its definition would not be controlling. "The ultimate power to interpret, construe and enforce the constitution of this State belongs to the judiciary." *Seattle Sch. Dist. No. 1 v. State*, 90 Wn.2d 476, 496, 585 P.2d 71 (1978) (citing cases). Having found that the basic education act does not provide the operative definition of the term "children" under article IX, we examine other statutes to determine the common understanding of the term "children" in Washington.

Under current law, only individuals *under* age 18 are required to attend school. RCW 28A.225.010 (children up to age 18 required to attend school, subject to certain exceptions). This statute supports the idea that individuals are treated like adults once they hit age 18, as *choice* is commonly recognized as a hallmark of adulthood. Furthermore, as already noted, chapter 28A.193 RCW's "definition" of children counteracts any argument that the Legislature intended to establish a child age-limit regarding education above age 18. RCW 28A.193.030(3)-(4); RCW 72.09.460(2) (act mandates that DOC inmates receive education until age 18).

---

[12] The relevant portion of RCW 28A.193.005 specifically states that:

The legislature finds that this chapter fully satisfies any constitutional duty to provide education programs for juvenile inmates in adult correctional facilities. The legislature further finds that biennial appropriations for education programs under this chapter amply provide for any constitutional duty to educate juvenile inmates in adult correctional facilities.

Finally, although not within the education context, individuals over age 18 are generally emancipated and are able to marry without parental consent, to execute a will, to vote, to enter into a legally binding contract, to make medical decisions about their own care and those of their issue, and to sue and be sued. *See* RCW 26.28.010, .015(1)-(6) (under "Age of Majority" chapter, "all persons shall be deemed and taken to be full age for all purposes at the age of eighteen years[,]" unless otherwise provided).[13] These statutes further demonstrate that the common understanding of the definition of "children" for most purposes in Washington, including education, includes individuals up to age 18. Consequently, we hold that the term "children" under article IX includes individuals up to age 18.[14]

The State raises the alternative argument that whatever statutory or constitutional rights to an education the inmates may have had, they disqualified themselves through their own criminal conduct. Specifically, the State contends that by engaging in conduct which compels their removal from the school system, the inmates have, by their own conduct and not through any failing of the State, disqualified themselves from the educational opportunities provided them.[15] We find the State's arguments unpersuasive and find it unnecessary to deal with this issue further since the Legislature has seen fit to provide an educational program to DOC inmates.

Having determined that the State is constitutionally

---

[13] *See also* chapter 13.64 RCW (under "Emancipation of Minors" chapter, residents 16 years of age or older may petition for a declaration of emancipation which would allow them "to have the power and capacity of an adult," RCW 13.64.060(1), (subject to certain exceptions).

[14] We note that the dissent mischaracterizes our statutory analysis by completely ignoring all of the other statutes we cite supporting the definition of "children" under article IX as those under age 18. *See* Dissent at 241-43 (dissent criticizes majority's reliance on RCW 26.28.015 without mentioning other statutes cited by majority).

[15] The State cites to language in *Seattle School District No. 1* indicating that the State may discharge its constitutional duties regarding education "only by performance unless that performance is prevented by the holder of the 'right.' " Br. of Appellants at 16 (quoting *Seattle Sch. Dist. No. 1*, 90 Wn.2d at 513).

required to provide educational services to children incarcerated in DOC facilities up to age 18, we need to determine whether the State is meeting its obligation. Consequently, we next examine chapter 28A.193 RCW to determine whether it satisfies article IX. We hold that it does.

## B. Chapter 28A.193 RCW and Article IX

In determining whether chapter 28A.193 RCW satisfies article IX, we must first determine article IX's basic requirements. The inmates argue that chapter 28A.193 RCW violates article IX both "on its face" and "as applied" by creating a separate and inferior system of education for persons who are incarcerated in adult prisons in Washington. Under the inmates' theory, chapter 28A.193 RCW is *presumed unconstitutional* because it interferes with a "fundamental right." *See* Br. of Resp'ts at 22. While we recognize that the State's paramount obligation to provide for basic education does not end with the establishment of a public school system, we also find the State is not obligated to provide an *identical* education to all children within the state regardless of the circumstances in which they are found.

## 1. The Inmates' Facial Challenge under Article IX

It is a well-established general rule that where the constitutionality of a statute is challenged, that statute is presumed constitutional and the burden is on the party challenging the statute to prove its unconstitutionality beyond a reasonable doubt. *E.g., Island County v. State*, 135 Wn.2d 141, 146-47, 955 P.2d 377 (1998) (citing cases). This "demanding standard of review" is justified because, as a coequal branch of government that is sworn to uphold the constitution, we assume the Legislature considered the constitutionality of its enactments and afford great deference to its judgment. *See Island County*, 135 Wn.2d at 147. "Additionally, the Legislature speaks for the people and we are hesitant to strike a duly enacted statute unless fully convinced . . . that the statute violates the constitution." *Id.* (citing cases).

In addition to the above standard of review, the

court's focus when addressing constitutional facial challenges is on whether the statute's language violates the constitution, not whether the statue would be unconstitutional "as applied" to the facts of a particular case. *See JJR Inc. v. City of Seattle*, 126 Wn.2d 1, 3-4, 891 P.2d 720 (1995). " '[A] facial challenge must be rejected unless there exists *no set of circumstances* in which the statute can constitutionally be applied.' " *In re Detention of Turay*, 139 Wn.2d 379, 417 n.27, 986 P.2d 790 (1999) (quoting with approval *Ada v. Guam Soc'y of Obstetricians & Gynecologists*, 506 U.S. 1011, 1012, 113 S. Ct. 633, 121 L. Ed. 2d 564 (1992) (Scalia, J. dissenting)). The practical effect of holding a statute unconstitutional on its face is to render it " 'utterly inoperative.' " 139 Wn.2d at 417 n.27. Here, to effectuate the facial challenge analysis we need to first determine what article IX requires, and then determine whether we are convinced beyond a reasonable doubt that there is no set of circumstances in which chapter 28A.193 RCW could satisfy article IX.

■ Article IX, section 2 clearly requires the State to create and "provide for a *general and uniform system of public schools*." (emphasis added). We have long held that this provision imposes upon the State a fundamental duty to create a common school *system*. In *Seattle School District No. 1*, we held that all children in Washington "have a 'right' to be amply provided with an education[; that] 'right' is constitutionally paramount and must be achieved through a 'general and uniform system of public schools.' " 90 Wn.2d at 513, 537-38; *see also Newman v. Schlarb*, 184 Wash. 147, 153, 50 P.2d 36 (1935) (duty imposed upon Legislature to provide " 'a general and uniform system of public schools.' ") (quoting *School Dist. No. 20 v. Bryan*, 51 Wash. 498, 502, 99 P. 28 (1909)). The Legislature satisfied part of its general obligation under article IX through Title 28A RCW's "Common School Provisions," which includes the basic education act.

■ However, as we stated earlier, the State's constitutional duty to provide educational services does not end

with the creation of a "general and uniform" school system. In addition to the requirements under article IX, section 2, the State has a *paramount duty . . .* to make *ample provision* for the education of *all children* residing within its borders . . . ." WASH. CONST. art. IX, § 1 (emphasis added); *see also Seattle Sch. Dist. No. 1*, 90 Wn.2d at 499. Nothing in this provision, however, mandates that the education must be *identical*. We recognized as much in *Tommy P.* when we held that a different education program in juvenile detention centers might be necessary to "reasonably address the special needs of juvenile offenders." 97 Wn.2d at 398.[16]

Having outlined the general requirements of article IX, the question remains whether we are convinced beyond a reasonable doubt that there is no set of circumstances in which chapter 28A.193 RCW could meet the constitutional minimum due under article IX. Here, the educational program outlined in chapter 28A.193 RCW

> must provide each offender a choice of curriculum that will assist the inmate in achieving a high school diploma or general equivalency diploma. The program of education may include but not be limited to basic education, prevocational training, work ethic skills, conflict resolution counseling, substance abuse intervention, and anger management counseling. The curriculum may balance these and other rehabilitation, work and training components.

RCW 72.09.460(2). The statute also outlines the infrastructure and support services required, and the proper allocation of money received from the Legislature's biennial appropriations. RCW 28A.193.005, .050, .080.

 The inmates have failed to prove beyond a reason-

---

[16] As also noted in Justice Talmadge's concurrence, Concurrence at 235 n.26, there are numerous examples of how Title 28A RCW is an act flexible enough to meet the educational needs of a highly varied population. *See* RCW 28A.150.305 (suspended or expelled students may be required to attend alternative education programs, which may be operated by entities other than school districts); chapter 28A.165 RCW (remedial education under the "Learning Assistance Program"); chapter 28A.195 RCW (private schooling allowed); chapter 28A.200 RCW ("Home-Based Instruction" allowed); and chapter 28A.190 RCW ("residential schools" allowed).

able doubt that chapter 28A.193 RCW violates article IX. This statute makes ample provision for educational programs designed to address the special educational and rehabilitative needs of children incarcerated in adult prisons. As we have often held, it is not this court's role to micromanage education in Washington. *See Tommy P.*, 97 Wn.2d at 398 (Legislature's need to customize education programs recognized); *Seattle Sch. Dist. No. 1*, 90 Wn.2d at 520 ("While the Legislature must *act* pursuant to the constitutional mandate to discharge its duty, the general authority to select the *means* of discharging that duty should be left to the Legislature."). Consequently, we exercise judicial restraint and hold that under article IX's broad constitutional guidelines, chapter 28A.193 RCW is constitutional on its face. *See Seattle Sch. Dist. No. 1*, 90 Wn.2d at 518 (judiciary required to provide broad constitutional guidelines regarding education within which Legislature may work).

2. The Inmates "As Applied" Challenge under Article IX

Regarding their "as applied" challenge, the inmates argue that chapter 28A.193 RCW is unconstitutional "as implemented by the State for the 1998-99 school year." Br. of Resp't at 26-32. We disagree.

The inmates' claim demonstrates a misunderstanding of the nature of "as applied" challenges. Under an "as applied" challenge, the party challenging the statute contends that the statute, as actually applied, violated the constitution. *See Turay*, 139 Wn.2d at 417 n.27 (citing *Ada*, 506 U.S. at 1012 (Scalia, J., dissenting)). Here, the inmates fail to provide any specific facts demonstrating that the State's application of chapter 28A.193 RCW *has violated* article IX. Rather, the inmates merely speculate about constitutional problems that *could result* from RCW 28A.193's application.[17]

---

[17] For example, the inmates assert that because OSPI spent five months on the bidding and contracting process for the 1998-99 school year, there is the potential that this process *could* take longer in the future and cause delays in providing educational programs. According to the inmates, these delays *would* unconstitutionally burden the prisoners' constitutional rights to an education.

Consequently, the inmates' "as applied" challenge must fail.[18]

C. Special Education and Article IX

 The inmates assert that the Washington Constitution mandates that special education be provided to all children with disabilities under the age of 22. However, the inmates fail to cite any supporting legal authority for this proposition.[19] It is well established that this court will not address constitutional issues "without benefit of citation to appropriate supporting authority." *Farnam v. CRISTA Ministries*, 116 Wn.2d 659, 680, 807 P.2d 830 (1991) (citing case). Consequently, given the importance and complexity of this issue, we decline to address it here and leave the matter open for future determination upon a properly developed record.

## IV

## CHAPTER 28A.193 RCW AND WASHINGTON'S EQUAL PROTECTION CLAUSE, ARTICLE I, SECTION 12

 The inmate class also argues that chapter 28A.193 RCW violates Washington's equal protection clause, article I, section 12. The inmates reiterate their argument that chapter 28A.193 RCW infringes on a fundamental or absolute right and, thus, is presumptively invalid. Under the inmates' theory, the State violates Washington's equal protection clause because it treats incarcerated youths differently from nonincarcerated youths while failing to justify the disparate treatment through a compelling state interest.

---

[18] In response to the inmates' concerns about potential gaps in coverage, and the dissent's concerns about the "competitive bidding system" allegedly created by chapter 28A.193 RCW, *see* Dissent at 244 n.29, we note that nothing in our decision prohibits a subsequent "as applied" challenge after chapter 28A.193 RCW has a more developed track record. We simply find that such conjecture and speculation is inappropriate at this time. *See Turay*, 139 Wn.2d at 417 n.28.

[19] The inmates' only citation to "authority" is their reference to a statement contained in the findings of fact and conclusions of law from a 1983 case before the Thurston County Superior Court. Unpublished opinions, however, are not proper authority on appeal. *See* RAP 10.4(h).

We disagree and hold that under the proper equal protection analysis, chapter 28A.193 RCW does not violate Washington's equal protection clause.[20]

The first step in conducting any equal protection analysis is determining the appropriate standard of review. *Foley v. Department of Fisheries*, 119 Wn.2d 783, 789, 837 P.2d 14 (1992) (citing case). Contrary to the dissent's assertions, to apply strict scrutiny, we must first find that a fundamental right is being infringed or a suspect class is involved. *See O'Day v. King County*, 109 Wn.2d 796, 814, 749 P.2d 142 (1988); *City of Seattle v. State*, 103 Wn.2d 663, 670-71, 694 P.2d 641 (1985).

The dissent argues that "[w]hether the statute infringes upon a fundamental right is a legal conclusion, not a legal premise. Properly stated, the threshold question is whether 'the allegedly discriminatory classification . . . *threatens* a fundamental right.' " Dissent at 239 (quoting *State v. Shawn P.*, 122 Wn.2d 553, 560, 859 P.2d 1220 (1993)). The dissent's approach misinterprets the applicable analytical framework.

In *O'Day*, this court held that the trial court improperly applied strict scrutiny because the individual's fundamental right to free speech had "not been affected" by the statute. *O'Day*, 109 Wn.2d at 814. This court went on to hold that application of the relevant laws did not "*infringe* on any fundamental interest for the purpose of equal protection analysis." *Id.* (emphasis added) (citing case). Similarly, in *City of Seattle*, this court held its equal protection inquiry focuses on whether the relevant law "*infringes* upon or *burdens*" the individual's fundamental right. *See* 103 Wn.2d at 670-71 ("any statute which *infringes* upon or *burdens* the right to vote is subject to strict scrutiny." (emphasis added)).

It is clear from both these cases that infringement of a

---

[20] There is no need to separately address the equal protection clause under the federal constitution because it is well established that the federal and state equal protection clauses are construed identically and claims arising under their scope are considered as one issue. *State v. Manussier*, 129 Wn.2d 652, 672, 921 P.2d 473 (1996).

fundamental right *is* a legal requirement to applying strict scrutiny review. On the other hand, *impermissible* infringement—infringement of a fundamental right by an overly broad law unsupported by a compelling state interest—is an ultimate legal conclusion in an equal protection analysis. *See O'Day*, 109 Wn.2d at 814; *City of Seattle*, 103 Wn.2d at 670-71. In other words, finding an infringement of the fundamental right is a necessary predicate to determining whether that right was *impermissibly* infringed. Consequently, the applicable standard of review depends upon whether chapter 28A.193 RCW *infringes* on the inmates' fundamental right to education.[21]

As we previously held, however, chapter 28A.193 RCW does not infringe upon an inmate's fundamental right to education under article IX. Consequently, the only alternative for applying strict scrutiny is if the statute targeted a suspect class. However, in this case neither the inmates' incarceration nor juvenile status creates a suspect class. *See In re Personal Restraint of Stanphill*, 134 Wn.2d 165, 174-75, 949 P.2d 365 (1998) (rational basis review applied to inmates' equal protection claims); *In re Boot*, 130 Wn.2d 553, 572-73, 925 P.2d 964 (1996) (rational basis review applied to juveniles' claims). In the absence of infringement of a fundamental right or involvement of a suspect class, rational basis review applies.

Under rational basis review, there is a presumption of constitutionality and a statute is upheld "unless it rests on grounds wholly irrelevant to achievement of legitimate state objectives." *Shawn P.*, 122 Wn.2d at 561. In other words, the rational basis test provides that "a statutory classification will be upheld if any conceivable state of facts reasonably justifies the classification." *Id.* at 563-64.

---

[21] The inmates' attempt to trigger a more stringent standard of review through the abstract invocation of a "fundamental right to education" is insufficient. Taken to its logical extreme, the inmates' argument would subject *all* legislation involving *education* to strict scrutiny; this is inconsistent with prior precedent. *See, e.g., Leonard v. City of Spokane*, 127 Wn.2d 194, 197-98, 897 P.2d 358 (1995) (this court applied presumption of constitutionality in challenge to Community Redevelopment Act's diversion of tax dollars from common schools to public improvements).

The party challenging the legislation has the burden of proving that the classification is "purely arbitrary." *State v. Coria*, 120 Wn.2d 156, 172, 839 P.2d 890 (1992).

■ Under these standards, we find the Legislature's decision to treat individuals under age 18 in prison differently with respect to education from individuals under age 18 who are in the normal school system completely justified. Incarcerated and nonincarcerated youths are *not* similarly situated for the purpose of education. As we have previously recognized, incarcerated children may have different educational needs and may require different training programs more appropriate to their circumstances. *See Tommy P.*, 97 Wn.2d at 398 (educational programs offered in juvenile detention facilities "should reasonably address the special needs of juvenile offenders"). Chapter 28A.193 RCW, in conjunction with RCW 72.09.460(2), allows the State to properly tailor its educational programs for members of the inmate class. We find that the State's provision of education for incarcerated children through chapter 28A.193 RCW is rationally related to the legitimate state objective of meeting the unique education needs of the inmates.

We similarly find the different treatment of individuals over age 18 who are in prison justified under the rational basis test. As detailed in our discussion of inmate rights under article IX, inmates over age 18 are not children, and thus have no fundamental right to education. While we may agree with the dissent that the Legislature *should* dedicate resources toward educating members of the inmates' class, it is not our choice and the State is within its prerogative under the rational basis standard to prioritize its resources regarding the education of individuals over age 18.

V

THE STATE'S DUTY UNDER THE INDIVIDUALS
WITH DISABILITIES EDUCATION ACT (IDEA)

■ The inmates assert that the trial court erred in dismissing their claims under the IDEA, 20 U.S.C. §§

1400-1436. The inmates argue that the State has a duty under the IDEA to provide special education to disabled persons under age 22 who are incarcerated in Washington State prisons and that this duty existed under the IDEA both before and after the 1997 amendments to the act. We disagree and hold that the IDEA does not require the State to provide special education services to persons over age 18 who are incarcerated in adult prisons.

The IDEA was enacted to address the special educational needs of disabled children. The act's purpose is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . ." 20 U.S.C. § 1400(d)(1)(A). One goal of the IDEA is to provide comparable education to disabled students as that provided to nondisabled students. States that comply with the IDEA are entitled to federal funding to assist in the provision of a free appropriate public education to disabled children residing within the state. 20 U.S.C. § 1412. In 1997, Congress amended the IDEA to expressly require states receiving funds under the act to provide a free appropriate public education (FAPE) to children with disabilities who are expelled or suspended from school. IDEA Amendments for 1997, Pub. L. No. 105-17, § 612, 111 Stat. 37, 60 (1997).

Contrary to the inmates' assertions, the pre-1997 amendments version of the IDEA did not require the State to provide special education to persons who have been incarcerated in adult correctional facilities for conduct wholly unrelated to their disability. *See Virginia Dep't of Educ. v. Riley*, 106 F.3d 559, 561 (4th Cir. 1997) (IDEA did not apply to disabled children expelled or suspended from school); *accord Doe v. Board of Educ. of Oak Park & River Forest High Sch. Dist. 200*, 115 F.3d 1273, 1277-79 (7th Cir. 1997). The *Riley* court concluded that Congress must make the state's duty clear when it conditions the receipt of federal funds upon a federal mandate. *Riley*, 106 F.3d at 561. The *Riley* court found that "neither the text of section 1412(1),

the legislative history, nor the purpose of the IDEA even suggests" that Congress intended the IDEA apply to disabled children expelled from school. *Id.* at 561. The same is true regarding disabled children who are incarcerated in adult prisons. Based on Congress's failure to even suggest in the IDEA's text, legislative history or purpose that the IDEA applies to children incarcerated in adult facilities, we hold that the pre-1997 amendment version of the IDEA did not require the State provide special educational services to members of the inmate class.

Having determined that the pre-1997 amendment version of the IDEA did not apply to members of the inmate class, we examine the IDEA after the 1997 amendments. In addition to explicitly *including* disabled children who are expelled or suspended from school, the 1997 amendments contain an exception to a state's duty to provide special educational services to disabled children. Under the exception, a state's duty to provide a FAPE to children with disabilities does not apply to (1) children aged 3 through 5 and 18 through 21 in a state where its application would be inconsistent with state law or practice; and (2) children aged 18 through 21 where state law does not require that special education related services under 20 U.S.C. § 1412(a)(1)(B) be provided to children with disabilities who, prior to their incarceration in an adult prison, (a) were not actually identified as being a child with a disability under § 1401(3) or (b) did not have an individualized education program under §§ 1411-1420, 34 C.F.R. § 300.122 (citing 20 U.S.C. § 1412(a)(1)(B)).

The State argues that 20 U.S.C. § 1412(a)(1)(B)(i) relieves them of any statutory duty under the IDEA to provide special educational services to disabled children between the ages of 18 and 21 because such would be inconsistent with state law, specifically, RCW 28A.193.030(3). While the State is unable to point to cases interpreting the above exceptions to the IDEA, the State points to several cases interpreting the same language contained in a prior version of the IDEA. These cases interpreted the same language

now contained in § 1412(a)(1)(B)(i) to mean that a state is not required to provide special education to persons over 18 if the state does not provide basic educational services to nondisabled students over age 18. *See Yankton Sch. Dist. v. Schramm,* 93 F.3d 1369, 1376-77 (8th Cir. 1996) (interpreting former 20 U.S.C. § 1412(2)(B)) (1994); *Timms v. Metropolitan Sch. Dist.,* 722 F.2d 1310, 1313-14 (7th Cir. 1983) (interpreting same).

The inmates argue that state law, specifically chapter 28A.155 RCW, requires the State to provide special education to all children in Washington under age 22. However, as we have already held, chapter 28A.155 RCW does not apply to students incarcerated in adult correctional facilities. Rather, chapter 28A.193 RCW is the relevant statute for juveniles incarcerated in adult facilities. Under the plain language of chapter 28A.193 RCW, the State is required to provide education to juveniles incarcerated in adult facilities only until age 18. *See* RCW 28A.193.030(3); RCW 72.09.460(2). Therefore, under the amended IDEA, the State is required to provide special education to such juveniles only under age 18 as well. *See Yankton Sch. Dist.,* 93 F.3d at 1376-77; *Timms,* 722 F.2d at 1313-14.

Here, the clear language of the educational provider contracts requires that the provider of educational services at the DOC facilities "[p]rovide special education, consistent with Chapter 392-172 WAC." CP at 1697; *see also* Ex. 2, at 2 (agreement between DOC and special education services), Mot. to Supplement the R., *Tunstall v. Bergeson,* No. 67448-5 (Wash. Supreme Ct. Sept. 13, 1999). Consequently, the State is currently in full compliance with its duty under the IDEA to provide special education to disabled inmates who are under age 18. Therefore, we hold that the trial court properly dismissed the inmates' IDEA claims.

## VI

### THE STATE'S DUTY UNDER § 504 OF THE REHABILITATION ACT OF 1973

■ The inmates also argue that the State has a duty under § 504 of the Rehabilitation Act of 1973 to ensure that

disabled children in prison receive a FAPE.[22] It has been held that a state's duty under the IDEA and § 504 may be different. However, "It is well-settled that . . . where the IDEA claims are subject to dismissal the § 504 claims based upon the same allegations [§ 504 claims], must also be dismissed." *Doe v. Arlington County Sch. Bd.*, 41 F. Supp. 2d 599, 608 (E.D. Va. 1999) (citing, inter alia, *Independent Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 562 (8th Cir. 1996)). The inmate class has not cited, and this court has not found, any cases where a court held that § 504 was violated but the IDEA was not. Consequently, we hold that compliance in this case with the IDEA constitutes compliance with § 504 of the Rehabilitation Act of 1973, and thus the trial court properly dismissed the inmates' § 504 claims.[23]

## VII

## THE SCHOOL DISTRICTS' OBLIGATIONS UNDER FEDERAL AND STATE LAW

As noted above, the trial court dismissed all claims brought against the defendant school districts concluding that the districts are not obligated under either federal or state law to provide education in Washington State prisons. We agree.

Under RCW 28A.193.020(1)(a), the school district in which the DOC facility is located has first priority to provide inmate education. If the school district declines, the contract is then offered to the educational service district in

---

[22] The relevant language at issue in 29 U.S.C. § 794(a) provides that

No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

[23] The inmates moved for fees and costs against the State for the appeal of their federal claims. Because the inmates do not prevail on their federal claims, however, they are not entitled to an award.

which the DOC facility is located, and finally to other school districts, educational service districts, institutions of higher education, and private contractors. RCW 28A.193.020 (1)(b)-(c). If none of these parties contracts with the State, the educational service district in which the DOC facility is located is the default provider and is required to provide the educational services. RCW 28A.193.020(2).

As school districts are "creatures of statute" and have only those powers and rights specifically granted to them by statute,[24] we must examine the relevant statutory and constitutional provisions to determine whether the districts have a statutory or constitutional duty to provide education in Washington State prisons. It is clear after examining the relevant statutory and constitutional provisions that they have no such duties.

The only relevant statutory reference to school districts regarding inmate education is found in chapter 28A.193 RCW. Chapter 28A.193 RCW, however, gives the districts the *authority* to provide educational services only to children incarcerated in DOC facilities and does not *obligate* the districts in any way. *See* RCW 28A.193.020, .030, .040, .060. As previously stated, the local educational service district, not the school district, is the default provider of educational services for juvenile inmates. RCW 28A.193.020(2). Furthermore, the school districts have no duty under Washington's constitution. Article IX makes no reference whatsoever to school districts.

The inmates also argue that school districts are the only entity qualified to provide educational services under article IX. This argument is clearly without merit because, as seen in many instances, the Legislature has found entities other than school districts qualified to educate our youth. In addition to chapter 28A.193 RCW, the Legislature allows

---

[24] *See Moses Lake Sch. Dist. No. 161 v. Big Bend Community College*, 81 Wn.2d 551, 556, 503 P.2d 86 (1972) ("[A] school district is a creature of the legislature. It exists solely for public purposes and may exercise only those powers expressly granted by the legislature, those necessarily implied or incident to the powers granted, and those essential to the legislature's declared purpose.") (citing cases).

for alternatives to the "common school system" such as home schooling and private schools where the school districts are not involved. *See* ch. 28A.195 RCW ("Private Schools"); ch. 28A.200 RCW ("Home-Based Instruction"). Consequently, we hold that the *option* of operating educational programs for inmates in the DOC facility should not be construed as a constitutional or statutory mandate.

## VIII

## CONCLUSION

In sum, we hold that: (1) individuals incarcerated in DOC facilities are covered by chapter 28A.193 RCW, not the basic education act or the special education act; (2) the term "children" as used in article IX of the Washington Constitution includes individuals up to age 18, including individuals incarcerated in DOC facilities; (3) chapter 28A.193 RCW satisfies the requirements of article IX and does not violate equal protection; (4) neither the IDEA nor § 504 of the Rehabilitation Act of 1973 is violated by the lack of special education services to DOC inmates up to age 22; and (5) the school districts are not statutorily or constitutionally obligated to provide educational services to DOC inmates.

GUY, C.J., SMITH, TALMADGE, SANDERS, JJ., and SWEENEY, J. Pro Tem., concur.

TALMADGE, J. (concurring) — I write separately to express my concern that certain loose language in *Seattle Sch. Dist. No. 1 v. State*, 90 Wn.2d 476, 585 P.2d 71 (1978), regarding the breadth of the constitutional provisions on education in article IX of the Washington Constitution, may have found full voice in the dissent.

The dissent perceives an individualized constitutional right to an education based on article IX and *Seattle School District*. Dissent at 239-40. Moreover, as if that is not enough, the dissent contends this right is "fundamental." Dissent at 242. The dissent's articulation of this right is dangerously imprecise in its content and breadth.

What is the practical consequence of the dissent's individualized constitutional right to education? How does the dissent define the content of this right? Does the dissent mean to say that every child in Washington has a fundamental constitutional right to specific educational programs such as 12 years of meaningful instruction in English, mathematics, science, social studies, foreign language, economics, the arts, physical education, computer sciences, or the like? How does the dissent measure if the individual right to education has been met? If a child in the sixth grade fails to achieve at the sixth grade level in mathematics or English, is the child's fundamental constitutional right to an education abridged?[25] If we do not assess the child's achievement of a constitutionally guaranteed education annually at each grade level, do we then wait until some other point in time, perhaps when the child graduates from high school? Or do we instead assess a child's achievement subject-by-subject? Will a cause of action lie to compel the State to pay for all necessary services to bring the child's achievement in school to this as yet undefined but constitutionally prescribed level? How will the dissent direct the Legislature to pay for such services?

The framers of Washington's Constitution had a more precise idea in mind when they addressed education. Article IX, section 1 of our Constitution states:

> **PREAMBLE.** It is the paramount duty of the state to make ample provision for the education of all children residing within its borders, without distinction or preference on account of race, color, caste, or sex.

Section 2 of that article directs the Legislature to provide an appropriate educational system in Washington.

> **PUBLIC SCHOOL SYSTEM.** The legislature shall provide

---

[25] Indeed, long-standing Washington case law forbids a private cause of action for a student's individual failure to achieve. *Camer v. Seattle Sch. Dist. No. 1*, 52 Wn. App. 531, 762 P.2d 356 (1988), *cert. denied*, 493 U.S. 873, 110 S. Ct. 204, 107 L. Ed. 2d 157 (1989).

for a general and uniform system of public schools. The public school system shall include common schools, and such high schools, normal schools, and technical schools as may hereafter be established. But the entire revenue derived from the common school fund and the state tax for common schools shall be exclusively applied to the support of the common schools.

The framers made clear an elected superintendent of public instruction and an elected Legislature, not the judiciary, manage Washington's educational system. WASH. CONST. art. III, § 22 (superintendent "shall have supervision over all matters pertaining to public schools, and shall perform such specific duties as may be prescribed by law"). We have said: "The state exercises its sovereign powers and fulfills its duties of providing education largely by means of a public school system under the direction and administration of the State Superintendent of Public Instruction, State Board of Education, school districts and county school boards." *Edmonds Sch. Dist. No. 15 v. City of Mountlake Terrace*, 77 Wn.2d 609, 611, 465 P.2d 177 (1970).

Our case law clearly confirms the broad power of the Legislature to define educational opportunity for Washington students by giving meaning to a "common school education." *Seattle Sch. Dist.*, 90 Wn.2d at 518-19. Moreover, the Legislature has broad discretion to define the means of providing educational opportunity to children.[26] As early as 1935, we held the state can meet its duty under

---

[26] The dissent's assertion that chapter 28A.193 RCW may violate article IX because that statute allows school districts and educational service districts (ESDs) to bid for contracts to provide educational opportunities for young people in prison is plainly wrong. First, the dissent does not understand the role of educational service districts. Contrary to the dissent's view, ESDs actually do provide a variety of educational services directly to students. *See* RCW 28A.310.010 (purposes of ESDs). *See also* RCW 28A.310.180 (ESDs may provide cooperative service programs, joint purchasing programs, and direct student services such as pupil transportation); RCW 28A.310.350 (core services of ESDs may include special education and transportation services, provision of learning resources, health education); RCW 28A.310.470 (superintendent of public instruction (SPI) may delegate to ESDs any program, project, or service authorized by Legislature to be performed by SPI).

Second, the dissent's interpretation of article IX's requirement of a general and uniform educational system is novel. If only a general and uniform educational system is constitutionally permissible in the dissent's view, making contracted services unconstitutional, then are parochial schools constitutionally infirm? After

article IX by selecting any method it sees fit to organize the educational system; we upheld a cooperative administrative structure for education involving state, county, and school district officers. *Newman v. Schlarb*, 184 Wash. 147, 153, 50 P.2d 36 (1935). *See also State ex rel. DuPont-Fort Lewis Sch. Dist. No. 7 v. Bruno*, 62 Wn.2d 790, 384 P.2d 608 (1963); *Edmonds Sch. Dist. No. 15*, 77 Wn.2d 609.

We have wisely chosen not to prescribe the content of an education mandated by the Washington Constitution in our earlier decisions on the scope of article IX. *See, e.g., Seattle Sch. Dist.*, 90 Wn.2d at 518, 520; *Tommy P. v. Board of County Comm'rs*, 97 Wn.2d 385, 398, 645 P.2d 697 (1982). Indeed, the content of educational opportunity changes over time, far beyond what this Court has the power to dictate. An 1889 common school education is different from such an education in 2000. For example, computer skills now critical to any contemporary Washington student were not contemplated in the agrarian Washington of 1889. This fact alone would suggest the dissent's articulation of a broad individual right goes too far.

The Washington Constitution effectively offers children in this state a constitutional right to *educational opportunity*. The state has the paramount duty to make ample provision for this opportunity in the education of its children. The Legislature's paramount duty is to define this educational opportunity in the establishment of an educational system and to fund it. Individual children, their parents, and local school districts each have standing to compel the Legislature to implement this constitutional mandate. But the courts cannot prescribe an individual right to a specific form of education.

---

all, parochial schools provide educational services outside the control of school districts. *See* chapter 28A.195 RCW. How about home schooling? Home schools involve neither school districts nor schools. *See* chapter 28A.200 RCW. The dissent fails to understand Washington's diverse, pluralistic structure for the delivery of educational services.

In sum, where does the logic of the dissent's analysis lead? Is the constitutional right to a general and uniform educational system for youthful offenders satisfied only if those offenders are somehow removed from prison and placed in regular classrooms?

Under a more precise formulation of the constitutional interest of children, a child should not have a right to sue for an individualized level of educational achievement in a subject or at a grade level, as the dissent would appear to permit. But if the Legislature defined a common school education and failed to fund it at the defined level, or if a school district failed to offer classes in English or mathematics at a high school, for example, when such classes were determined by the state to be compulsory for a child's graduation from high school, then an individual action might lie to compel the enforcement of the constitutional mandate.

We should be exceedingly cautious about characterizing rights as "absolute" or "fundamental," lest we arrogate to the judiciary total responsibility for running Washington's education system. That is not what our constitutional framers intended. The judiciary cannot, and should not, "constitutionalize" education in Washington so as to place the administration and the funding of education beyond the responsibility of the executive and legislative branches to whom that responsibility was *expressly* entrusted by the framers. The courts are ill-equipped to annex such a duty from the other branches and to execute the considerable responsibilities associated with it.

Because the majority's disposition of the issues in this case is in accord with the delineation of article IX of the Washington Constitution set forth here, I concur in the majority opinion.

JOHNSON, J. (dissenting) — I respectfully dissent.

The Washington State Constitution requires the State "to make ample provision for the education of all children residing within its borders . . . ." WASH. CONST. art. IX, § 1. We have long recognized this paramount constitutional duty of the State, *see Seattle Sch. Dist. No. 1 v. State*, 90 Wn.2d 476, 511-12, 585 P.2d 71 (1978), which the majority eviscerates by relying on unconvincing distinctions and

irrelevant statutes. By manipulating the definition of "child," the majority denies Washington children their constitutional right to education and equal protection of the law. The trial court's decision recognized the constitutional right of children in Washington to a high school education, regardless of their criminal past. This decision is correct.

The majority loosely distinguishes *Tommy P. v. Board of County Comm'rs*, 97 Wn.2d 385, 645 P.2d 697 (1982). By drawing three unconvincing distinctions with this case, the majority disposes of respondent's argument "that *Tommy P.* stands for the proposition that children do not lose their rights to an education under the basic education act simply because they are incarcerated." Majority at 213. I disagree and would apply the approach established by *Tommy P.* to recognize the importance of this constitutional right.

The court in *Tommy P.* found that children in Washington had a statutory right to education under Title 13 RCW and Title 28A RCW. *Tommy P.*, 97 Wn.2d at 386. This court found the right to education in the specific provisions of both titles, and in the broad principles they stood for and, therefore, refrained from "considering whether the right may also be based on the United States Constitution or this state's constitution." *Tommy P.*, 97 Wn.2d at 391 (citing *Senear v. Daily Journal-Am.*, 97 Wn.2d 148, 641 P.2d 1180 (1982)). This restraint was in accord with the long-standing tradition in United States courts of avoiding constitutional questions when a decision can be based on statutory grounds. However, the principles underlying *Tommy P.* are of constitutional significance and should not be so easily abandoned.

The majority distinguishes *Tommy P.* by noting those plaintiffs were juvenile offenders, not children who had been "declined to adult court or incarcerated in adult facilities." Majority at 214. Whether an offender is a juvenile or a child declined to adult court is entirely irrelevant. By drawing this distinction, the majority deprives a child of the constitutional right to a high school education simply because he or she committed a serious crime early in life. I

cannot agree with this erosion of such a significant constitutional right.

By drawing an inappropriate distinction between children on the basis of whether they have committed a crime or not, the majority compounds its error by applying an incorrect constitutional analysis. The majority applies something similar to a rational basis review in this case and ignores our constitutional duty to apply heightened scrutiny to statutes that threaten fundamental rights. The majority cites cases that are only tangentially relevant to stand for the proposition that a statute must infringe upon a fundamental right before heightened scrutiny will be applied. *See* majority at 224-26. Whether the statute infringes upon a fundamental right is a legal conclusion, not a legal premise. Properly stated, the threshold question is whether "the allegedly discriminatory classification . . . *threatens* a fundamental right." *State v. Shawn P.*, 122 Wn.2d 553, 560, 859 P.2d 1220 (1993) (emphasis added) (citing *State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987)). If the classification threatens a fundamental right, the statute is presumed *unconstitutional* and the State must establish that the statute is necessary to achieve a compelling governmental interest. *See Nielsen v. Washington State Bar Ass'n*, 90 Wn.2d 818, 820, 585 P.2d 1191 (1978). The State has failed to carry its burden.

The majority reads Wash. Const. art. IX, § 2 as establishing a fundamental right to a "common school *system*." Majority at 221. Put another way, an individual child's right to an ample education is recharacterized as merely a duty of the State to establish a common school system. This mistakes the means for the ends and misinterprets our precedent. In *Seattle School District No. 1 v. State*, this court held:

> By imposing upon the State a *paramount duty* to make ample provision for the education of all children residing within the State's borders, the constitution has created a "duty" that is supreme . . . . Flowing from this constitutionally imposed "duty" is its jural correlative, a correspondent "right"

permitting control of another's conduct. Therefore, all children residing within the borders of the State possess a "right," arising from the constitutionally imposed "duty" of the State, to have the State make ample provision for their education. Further, since the "duty" is characterized as *paramount* the correlative "right" has equal stature.

. . . .

Consequently, all children residing within the State's borders have a "right" to be amply provided with an education. That "right" is constitutionally paramount and must be achieved through a "general and uniform system of public schools."

*Seattle Sch. Dist.*, 90 Wn.2d at 511-13 (footnotes omitted).

By characterizing the right as one to a "common school system," the majority confuses the constitutional right to education with the constitutional right to a common school system. As both the plain text of article IX and our precedent show, the right at issue here is the right to an education. Because that right is fundamental, *see Seattle Sch. Dist.*, 90 Wn.2d at 513, strict scrutiny applies to any law that threatens that right. *See In re Personal Restraint of Young*, 122 Wn.2d 1, 26, 857 P.2d 989 (1993).

Because the right at issue appertains to "all children residing within [Washington's] borders . . . ," Wash. Const. art. IX, § 1, the first issue is the definition of "children." RCW 28A.150.220 of the Washington basic education act of 1977 (Basic Education Act) provides that "[e]ach school district's kindergarten through twelfth grade basic educational program shall be accessible to all students who are five years of age . . . and less than twenty-one years of age . . . ." RCW 28A.150.220(5). Through the Basic Education Act, the Legislature effectuates Wash. Const. art. IX. *See* RCW 28A.150.200. This definition of "child" is expansive. The Legislature found it appropriate to define "child" for the purposes of article IX as any person between *5 and 21 years of age*. RCW 28A.150.220(5).[27] Although the ma-

---

[27] RCW 28A.155.020 allows children with certain disabilities to complete the school year in which they turn age 21.

jority is correct in noting it is the duty of this court to interpret the meaning of the word "child" in article IX, majority at 218, there is no reason to reject the definition offered by the Legislature. It does not conflict with any interpretation we have already given this portion of the constitution. Nor is this a case where the Legislature has attempted to intrude upon the judicial sphere of power. *Cf. ·City of Boerne· v. Flores*, 521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997).

Nonetheless, the majority chooses to retool the meaning of the word "children." It holds "the common understanding" that "children" for our purposes "includes [only] individuals up to age 18." Majority at 218-19. The statutory authority cited by the majority is RCW 26.28.015, age of majority for enumerated specific purposes, *see* majority at 219, and selective miscellaneous statutes. The age at which an individual may contract, execute a will, vote, or sue is not relevant to whether he or she has a right to a high school education, and the Legislature has told us just that. Both the title of RCW 26.28.015 and the first six words of its text, "[n]otwithstanding any other provision of law . . . ," declare the legal irrelevance of other statutory definitions of "child" for the purposes of article IX, the Basic Education Act, or chapter 28A.193 RCW.

The critical flaw in the majority's analysis is shown by the fact it settles on the age of 18 as the upper limit of a "child." RCW 28A.193.030(3) limits the duty of a juvenile detention educator to provide education programs "for inmates under the age of eighteen . . . ." Although the majority never draws the connection, apparently it chooses 18 as the constitutional limit for childhood simply because the Legislature decided not to provide juvenile detention education for anyone older than 18. The majority's conclusion is certainly not compelled by RCW 26.28.015; that statute shows nothing more than the fact one becomes a juridical actor in Washington at the age of 18. Again, in the

context of defining the scope of the constitutional right to an education, this is simply not relevant.

I would recognize the right to education is fundamental, see *Seattle Sch. Dist.*, 90 Wn.2d 476. Because that right properly appertains to individuals under 21 years of age, RCW 28A.150.220, the appropriate burden is for the State to show the statute (which threatens that right) is narrowly drawn to serve some compelling state interest. *Cf. Northshore Sch. Dist. No. 417 v. Kinnear*, 84 Wn.2d 685, 759-61, 530 P.2d 178 (1974) (Stafford, J., dissenting) (arguing that because the right to an ample education is fundamental, the State may not escape its duty to provide education regardless of whether a *compelling* interest is present).

Under this approach, the State "must establish that its classification is 'necessary to promote a *compelling* governmental interest.' Under strict scrutiny, ' "the governmental interest claimed to justify the discrimination is to be carefully examined . . . to determine whether that interest is legitimate and substantial, and . . . the means adopted to achieve the goal [must be] necessary and precisely drawn." . . . .' " *State v. Hernandez-Mercado*, 124 Wn.2d 368, 375-76, 879 P.2d 283 (1994) (quoting *Graham v. Richardson*, 403 U.S. 365, 376, 91 S. Ct. 1848, 29 L. Ed. 2d 534 (1971) (quoting *Nyquist v. Mauclet*, 432 U.S. 1, 7, 97 S. Ct. 2120, 53 L. Ed. 2d 63 (1977) (citing *Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero*, 426 U.S. 572, 605, 96 S. Ct. 2264, 49 L. Ed. 2d 65 (1976)))) (footnotes omitted). In my judgment, the State has failed to do so.

There is no compelling state interest in discriminating against 19- to 21-year-old inmates. Of course, a different answer can be reached if the interest is more broadly drawn. As a whole, the statute obviously "provide[s] for the operation of education programs for the department of corrections' juvenile inmates," RCW 28A.193.005, which is clearly a compelling governmental interest. However, whether the statute does what it says it does is not the question for us. The question is whether the State has a

compelling interest in discriminating against 19- to 21-year-old juvenile inmates. It does not.

Chapter 28A.193 RCW threatens the fundamental right to an education. This statute places detention education programs on a wholly different plane than public education programs. While the classroom setting and the mechanics of bringing teachers and resources to students will obviously be different in detention than in public schools, this statute is not about those mechanics. It is about outsourcing juvenile offender education to private entities without a strong mechanism to ensure that the education will in fact be delivered and will in fact be "general and uniform," i.e., equal to a public education the citizens of this state have a right to expect. The majority insists, "we have previously recognized [] [that] incarcerated children may have different educational needs and may require different training programs . . . ." Majority at 227. And so we have. What the majority does not explain, and what I do not understand, is how recognition of that fact converts the commodification of juvenile offender education into a compelling interest.

Even if the State could establish a compelling interest in discriminating between the education of offenders and nonoffenders, the statute is not narrowly tailored to serve the interest asserted. There is no showing that denying education to juvenile offenders over 18 is necessary "to provide for the operation of education programs for the department of corrections' juvenile inmates." RCW 28A.193.005.

Equal protection requires that classification systems treat like people alike. *See State v. Blilie*, 132 Wn.2d 484, 493, 939 P.2d 691 (1997). Washington citizens have a right to finish high school until they are 21 or 22 years old. RCW 28A.150.220(5); RCW 28A.155.020. Incarcerated Washington residents are, however, denied the opportunity. RCW 28A.193.030(3). Instead of having until they are 21 or 22 years old to finish high school, youth in prison, who need education at least as much as those out of prison, have only

until they are 18.[28] Denying an education to the very individuals who presumably most need it bears no rational relation to any penological, deterrent, or rehabilitative purpose.[29]

Chapter 28A.193 RCW allows for a system that is separate and unequal and violates article IX of the Washington Constitution, by failing to provide uniform, general, and ample education for all children. I would hold that all children have the same constitutional right to a high school education, regardless of their criminal past.

MADSEN and ALEXANDER, JJ., concur with JOHNSON, J.

Reconsideration denied October 6, 2000.

---

[28] As the majority notes, "[o]f the 1,027 offenders under the age of 21, approximately 209 were believed to have either a high school diploma or a general equivalency diploma (GED)." Majority at 207. In other words, approximately 80 percent of the offenders under the age of 21 have no high school degree.

[29] I am also concerned the competitive bidding system set up by RCW 28A.193.020 will not produce an education that is general and uniform. And that is precisely what Wash. Const. art. IX requires. The statute invites any interested education provider to bid for the business of educating juvenile offenders. If no bids are received or accepted, the local educational service district is required to provide education. RCW 28A.193.020(2). However, the educational service districts have no experience in actually providing education, and there is no statutory mechanism to aid them in becoming able to provide education. As the trial court found, unless a school district is the education provider, it is unlikely the program will even have the authority to award a high school diploma. See Stipulated Facts 33, 36-42, 47 (Appellants' Emergency Mot. for Stay Pending Appeal, app. D). I agree. In the end, an entity with no experience in educating children and no realistic hope of gaining any, other than through trial and error, is charged with educating juvenile offenders. Most disturbing and telling of all is that education was provided at only two prisons in the 1998-99 school year, despite the statutory requirements of chapter 28A.193 RCW. Stipulated Facts 46, 47.