219 P.3d 941 (2009)
FEDERAL WAY SCHOOL DISTRICT NO. 210, a municipal corporation; Ed Barney; Cynthia Black; Evelyn Castellar; Ginger Cornwell; Charles Hoff; David Larson, individually and as guardian for Andrew Larson and Joshua Larson; Thomas Madden, individually and as guardian for Bryce Madden; Shannon Rasmussen; Sandra Rengstorff, individually and as guardian for Taylor Rengstorff and Kali Rengstorff, Respondents,
v.
The STATE of Washington; Christine Gregoire, in her capacity as Governor of the State of Washington; Terry Bergeson, in her capacity as Superintendent of Public Instruction; Brad Owen, in his capacity as President of the Senate and principal legislative authority of the State of Washington; Frank Chopp, in his capacity as Speaker of the House of Representatives and principal legislative authority of the State of Washington, Appellants.
No. 80943-7.
Supreme Court of Washington, En Banc.
Argued June 11, 2009.
Decided November 12, 2009.
*943 David Alan Stolier, Dierk Jon Meierbachtol, Maureen A. Hart, Attorney General's Office, Olympia, WA, for Appellant.
Lester Porter Jr., Kathleen J. Haggard, Lynette Meachum Baisch, Dionne & Rorick, Seattle, WA, for Respondent.
Catherine E. Maxson, Davis Wright Tremaine LLP, Seattle, WA, for Amicus Curiae League of Education Voters Foundation.
J.M. JOHNSON, J.
¶ 1 In The Washington Basic Education Act of 1977,[1] the legislature began a system of funding to school districts that improved all salaries but still allowed local teacher salary variation. By 2007, the gap between the highest and lowest average school salary figures had been narrowed considerably. Federal Way School District No. 210 receives the lowest salary funding level from the State. The school district, along with individual teacher, parent, and student plaintiffs, sought a court declaration that the State's continued use of the disparate salary figures in its funding formulas violated article IX, sections 1 and 2 and article I, sections 3 and 12 of the Washington Constitution. The trial court granted summary judgment for the school district and the individual respondents. We hold that the legislature's funding and formulas do not violate the Washington Constitution and reverse.

FACTS AND PROCEDURAL HISTORY
¶ 2 This is an appeal from a grant of summary judgment for Federal Way School District and several individual student, teacher, and parent respondents. The facts presented in this action, while complex, are essentially undisputed.

A. Recent History of Basic Education Funding
¶ 3 Since before statehood, financial resources to fund local schools varied widely, as did local costs of living. Washington Constitution article IX, section 1 declares it is "the paramount duty of the state to make ample provision for the education of all children residing within its borders. . . ." See Seattle Sch. Dist. No. 1 v. State, 90 Wash.2d 476, 511-12, 585 P.2d 71 (1978) (analyzing article IX, section 1). Article IX, section 2 states, "[t]he legislature shall provide for a general and uniform system of public schools." Prior to 1977, state operational funding to school districts was determined through a formula in which a minimum funding guaranty per student was enhanced by weighting factors. The school districts are locally elected and districts paid varying salaries to teachers, administrators, and classified staff. This variation was due to collective bargaining contracts, staff experience levels, and local school levies passed by voters.
¶ 4 The legislature replaced the weighted student formula when it passed The Washington Basic Education Act of 1977. Laws of 1977, 1st Ex.Sess., ch. 359, §§ 4, 5 (codified at ch. 28A.150 RCW), amended by Laws of 2009, ch. 548. The act sets forth a three part *944 program: (1) educational system goals, (2) educational program requirements, and (3) a new funding mechanism, called the staff unit allocation system. RCW 28A.150.200, amended by Laws of 2009, ch. 548, § 101 (effective until Sept. 1, 2011).
¶ 5 The staff unit allocation system consisted of staff to student ratios and funding allocation formulas,[2] including a formula to allocate funding for certificated school staff (administrators and teachers) and classified school staff salaries.[3]See Laws of 1977, 1st Ex.Sess., ch. 359, § 5. The system did not create a uniform statewide salary schedule; the legislature was aware that total salary equalization would upset political and economic expectations and disregard local variation in cost of living.[4] To account for the variance in existing school district salaries, the initial formula used amounts based on the existing average salaries paid by districts in the 1976-77 school year. See Laws of 1977, 1st Ex.Sess., ch. 339, § 97(1)(e)(i). Consequently, initial staff unit-based allocations varied widely.
¶ 6 The legislature continued to narrow the gap over time. Accordingly, from 1977 to 1989, it enacted a series of weighted salary increases while imposing salary controls on higher salary school districts.[5] Although not all of the legislature's efforts were equally effective, the end result was that education salary allocations were increased in each biennium from 1977 to 1989, and the allocation gap was reduced in each year except 1983. By 1989, only 34 out of 295 school districts statewide were allocated higher teacher base salaries than the others.
¶ 7 After the 1987-89 biennium, the legislature shifted its focus to increasing salaries for all educational staff. In 1989 and 1991, the legislature boosted teacher salaries, with the biggest increases going to the lowest paid teachers and those with master's degrees. Other staff received uniform increases.[6] From 1995 to 1999, the legislature increased all salary allocations to school districts uniformly for all three classes of staff. In 1999, the legislature again raised teacher salaries, with larger increases for beginning teachers.
¶ 8 In 2000, voters passed Initiative 732 (I-732) mandating uniform yearly cost of living increases without regard to salary differences (but providing no funding source). RCW 28A.400.205, amended by Laws of 2009, ch. 573 (effective July 1, 2009). In 2003 and 2004, the legislature enacted and funded *945 measures to narrow the gap between the lowest paid teachers and those with more experience. In the 2005 biennium, the legislature again adopted uniform salary increases. In the 2007 biennial budget, the legislature appropriated funds for uniform cost of living increases for all three classes of employees as well as funds to narrow the differences in the salary schedules between school districts. Laws of 2007, ch. 522, § 503.
¶ 9 Thus, between 1977 and 2007, the legislature not only enacted numerous uniform salary increases but also narrowed the salary allocation gap repeatedly. This was especially true for teacher salaries. Under the 1977 budget, the highest teacher average base salary was more than 150 percent greater than the lowest. By the 2008-09 school year, that gap had been reduced to 4.9 percent. LEAP 2, Clerk's Papers (CP) at 266-73; see also supra note 5.

B. Current Allocations[7]
¶ 10 Currently, average base salary amounts used in funding formulas are contained in LEAP 2. In 2007, the legislature determined allocations for certificated administrative and classified staff by multiplying the average number of full-time students in each school district by prescribed staff to student ratios, then multiplying the result by the average salary figure listed for each district in LEAP 2. See Laws of 2007, ch. 522, § 503(1)(a) (uncodified appropriations bill) (incorporating LEAP 2 by reference); RCW 28A.150.410. Allocations for teacher salaries are calculated the same way, but each district's average base salary figure is modified by factoring in a staff mix factor that adds funding based on higher levels of teacher experience and education.[8]
¶ 11 In the 2007 biennial budget, some school districts that historically paid higher salaries continued to receive allocations based on higher staff unit salary figures than Federal Way School District.[9] No single district received the highest staff unit allocation salary figures in all three categories of staff.[10] Out of 295 districts, 64 districts, including Federal Way School District, received allocations based on the lowest staff unit salary figures on LEAP 2 in all three staff categories.
¶ 12 The greatest disparity among school districts is in the salary figures for administrators. For the 2008-09 school year, four districts received funds calculated using the highest average base salary figure of $84,362, while Federal Way School District and 88 other districts received $57,986  a 45 percent gap.[11] For classified staff, the Seattle School District average base salary was $36,777, while for Federal Way School District and *946 224 other districts, the average base salary was $31,865  a 15 percent gap.
¶ 13 For teachers, Federal Way School District and 282 other districts' funding was calculated using the teacher average base salary figure of $33,898. Only 12 districts' funding was based on higher numbers up to $35,581. This is a 4.9 percent gap statewide. LEAP 2, CP at 266-73. Federal Way School District argues that in the 2006-07 school year, it would have received an additional $7.1 million in basic education funding if its allocation had been calculated using the highest salary figures on LEAP 2. CP at 112.

C. Procedural History
¶ 14 Federal Way School District filed suit in King County Superior Court seeking a declaration that the State's funding formulas for all three categories of public school employees violate the Washington Constitution. The superior court held that the disparity in salary figures on LEAP 2 (and incorporated into the appropriations act) violates the uniformity requirement of Washington Constitution article IX, section 2, and violates the equal protection rights of the individual respondents under article I, section 12.[12] Accordingly, the superior court granted the school district's motion for summary judgment. The State moved for direct review, which this court granted.

STANDARD OF REVIEW
¶ 15 A grant of summary judgment is reviewed de novo. Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 206, 11 P.3d 762, 27 P.3d 608 (2000). We view the facts and all reasonable inferences in the light most favorable to the nonmoving parties. Berrocal v. Fernandez, 155 Wash.2d 585, 590, 121 P.3d 82 (2005). Interpretation of the constitution is a question of law, which we review de novo. State v. Chenoweth, 160 Wash.2d 454, 462, 158 P.3d 595 (2007). Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Amalgamated Transit, 142 Wash.2d at 206, 11 P.3d 762; CR 56(c).

ANALYSIS

A. Article IX, Section 2 (the "uniformity clause")
¶ 16 The superior court held that the legislature's current funding allocation system violates the education article of our state constitution, which requires the legislature to "provide for a general and uniform system of public schools." Const. art. IX, § 2. We disagree.
¶ 17 A brief historical note first will add perspective to the analysis. At the time of the constitution, and since, total education funding has varied statewide, and local control has been assured through locally elected school board administrators and local voter-approved tax levies.
¶ 18 Statutes are presumed constitutional, and the burden is on the party challenging the statute to prove its unconstitutionality. Tunstall ex rel. Tunstall v. Bergeson, 141 Wash.2d 201, 220, 5 P.3d 691 (2000). This court has long held that article IX, section 2 imposes upon the State a fundamental duty to create a common school system.[13]Tunstall, 141 Wash.2d at 221, 5 P.3d 691. We have previously elaborated on what such a system must consist of. "Uniform" means that "every child shall have the same advantages and be subject to the same discipline as every other child." Sch. Dist. No. 20 v. Bryan, 51 Wash. 498, 502, 99 P. 28 (1909).
A general and uniform system, we think, is, at the present time, one in which every child in the state has free access to certain minimum and reasonably standardized educational and instructional facilities and *947 opportunities to at least the 12th grade  a system administered with that degree of uniformity which enables a child to transfer from one district to another within the same grade without substantial loss of credit or standing and with access by each student of whatever grade to acquire those skills and training that are reasonably understood to be fundamental and basic to a sound education.
Northshore Sch. Dist. No. 417 v. Kinnear, 84 Wash.2d 685, 729, 530 P.2d 178 (1974), overruled on other grounds by Seattle Sch. Dist. No. 1 v. State, 90 Wash.2d 476, 514, 585 P.2d 71 (1978).
¶ 19 The legislature created a common school system at its first session.[14]Newman v. Schlarb, 184 Wash. 147, 152, 50 P.2d 36 (1935). The Washington Basic Education Act of 1977 provided for uniform educational content, teacher certification, and instructional hour requirements, as well as a statewide assessment system enabling students to transfer from one school district to another without loss of credit and with access to substantially the same educational opportunities. See RCW 28A.150.200, amended by Laws of 2009, ch. 548, § 101 (effective until Sept. 1, 2011) (basic educational program requirements).[15] This court recently held that Title 28A RCW's "Common School Provisions," which include the basic education act, satisfy the "general and uniform" portion of the legislature's article IX duty. Tunstall, 141 Wash.2d at 221, 5 P.3d 691.[16]
¶ 20 Federal Way School District argues that the current school funding system violates the uniformity requirement of article IX, section 2 because funding for staff salaries in some school districts is calculated using different base salary figures than for others.[17] Federal Way School District relies primarily on Seattle School District No. 1, 90 Wash.2d 476, 585 P.2d 71 and McGowan v. State, 148 Wash.2d 278, 60 P.3d 67 (2002).[18]
¶ 21 Federal Way School District's reliance on Seattle School District No. 1 is misplaced. Federal Way School District argues that that case stands for the proposition that the State's school funding violated article IX, section 2's uniformity clause. But Seattle School District No. 1 addressed the local excess levy funding system, which has been replaced by a completely new and different funding mechanism by The Washington Basic Education Act of 1977. Seattle Sch. Dist. No. 1, 90 Wash.2d at 519 n. 14, 585 P.2d 71 (calling the act "a commendable effort to alleviate the constitutional void" addressed by the decision).
¶ 22 In Seattle School District No. 1, we held that the previous system was invalid under article IX, section 1  not under section 2. Regarding the interplay between section 2 and specific funding mechanisms, we said only that sections 1 and 2 together "require the State to amply provide for the education guaranteed through the medium of `a general and uniform system of public schools.'" Seattle Sch. Dist. No. 1, 90 Wash.2d at 522, 585 P.2d 71 (quoting Const. art. IX, § 2). This holding does not define a "uniform" system, and our cases have never held that the provision requires uniform funding.
*948 ¶ 23 Federal Way School District also relies on McGowan, 148 Wash.2d 278, 60 P.3d 67. In that decision, the court struck down a provision of I-782 that defined basic education to include specific salary increases for school employees as contrary to the requirements of article IX. We explained that the definition was unconstitutional because it sought to write into the State's constitutional obligation to provide basic education a requirement for a specific type and amount of funding. Our holding actually rebuts respondents' argument because they  similar to the plaintiffs in McGowan  seek to write into the State's increases for this district and its obligation to provide a uniform school system a specific type of funding, viz., uniform salary figures statewide. Moreover, McGowan does not address the interplay of article IX, section 2 and specific funding mechanisms, other than repeating Seattle School District No. 1's holding that compliance with article IX, sections 1 and 2 cannot be achieved through local levies. McGowan, 148 Wash.2d at 293-94, 60 P.3d 67. Thus, like Seattle School District No. 1, McGowan does not define "uniform" and does not hold that the provision requires uniform funding.
¶ 24 Federal Way School District has not cited any persuasive authority for its argument that article IX, section 2 requires the State to calculate basic education funding using uniform salary figures statewide. Our cases discussing article IX, section 2 make it clear that the provision requires uniformity in the educational program provided, not the minutiae of funding. Such details  unless specifically mandated by the constitution  are the province of the legislative branch. See Const. art. II, § 1 (legislative authority vested in the legislature, subject to powers reserved by the people); Const. art. IX, § 2 (mandating limits on the use of common school fund revenues). Federal Way School District fails to overcome the presumption that the statutory funding formulas are constitutional and fails to prove that the disparities in those formulas have violated article IX, section 2.

B. Article IX, section 1 (the "ample funding clause")
¶ 25 Federal Way School District cross-appeals on the issue of ample funding. The district argues that the legislature's salary allocation formulas for school staff violate article IX, section 1 by failing to fund all school districts at the same level. "It is the paramount duty of the state to make ample provision for the education of all children residing within its borders, . . . ." Const. art. IX, § 1. In its summary judgment ruling, the trial court explicitly held that respondents had failed to prove beyond a reasonable doubt that Federal Way School District is not amply funded. The trial court emphasized its decision "should in no way be construed to find or even suggest that the legislature has not provided for full funding of education in the Federal Way School District." CP at 434.
¶ 26 Federal Way School District's argument essentially relies on a single passage in Seattle School District No. 1, stating that the legislature must expressly deploy resources that are sufficient to provide for basic education. 90 Wash.2d at 537, 585 P.2d 71. But this court did not require uniformity of funding formulas or salary multipliers. Moreover, the cited passage merely begs the question of what is "sufficient." Id. Federal Way School District cites no authority for the argument that, in order for resources to be constitutionally sufficient, the legislature must allocate them uniformly or use uniform formulas. Our decision in Seattle School District No. 1 does not support the argument nor does the constitutional provision, and therefore we reject it.

C. None of the Individual Respondents Present Justiciable Claims
¶ 27 The trial court also held that the legislature's funding formulas violate some individual respondents' constitutional rights. The State continues to argue that the individual respondents' claims do not meet requirements for justiciability. The superior court did not address this argument. Because we require claims to be justiciable before we will decide them, we must address this threshold.
¶ 28 The Uniform Declaratory Judgments Act grants standing to persons "whose rights . . . are affected by a statute." *949 RCW 7.24.020. This is consistent with the general rule that a party must be directly affected by a statute to challenge its constitutionality. To-Ro Trade Shows v. Collins, 144 Wash.2d 403, 411-12, 27 P.3d 1149 (2001). Respondents must show they are being affected or denied some benefit; mere interest in state funding mechanisms is not sufficient to make a claim justiciable. See Walker v. Munro, 124 Wash.2d 402, 419, 879 P.2d 920 (1994). We held in Seattle School District No. 1 that both parent and children plaintiffs had standing where the adverse impact of insufficient revenue on educational programs for individual students was demonstrated by the record. Seattle Sch. Dist. No. 1, 90 Wash.2d at 495, 585 P.2d 71 (holding that students "are the intended and immediate objects of Title 28A RCW").
¶ 29 First, the individual parent, student, and teacher respondents claim they are alleging denial of a benefit and therefore do not have to show actual harm. But these individuals do not establish any benefit they are personally being denied. Individual parents, students, and teachers have no personal claim to education funding allocations; the funds are a benefit paid to the school district. Because teacher salaries are negotiated between the district and unions, individual parents, students, and teachers do not determine how allocated funds are spent (or receive any direct benefit).
¶ 30 Alternately, the individual parent and student respondents argue that the funding system  where other school districts receive more money for staff salaries  creates actual harm. This argument relies on the implicit assumption that unequal funding formulas result in disparate educational quality. But the only evidence in this record shows that Federal Way School District students generally score above the state average, as measured by WASL (Washington Assessment of Student Learning) scores. No adverse impacts are demonstrated by this record. Respondents have shown no educational opportunities unequal to those provided in other school districts in violation of the constitution. See Tunstall, 141 Wash.2d at 222, 5 P.3d 691.
¶ 31 Similarly, the individual teachers' article I, section 12 claim fails. To be justiciable under the Uniform Declaratory Judgments Act, a controversy must be an actual, present and existing dispute, not possible, dormant, or hypothetical. To-Ro Trade Shows, 144 Wash.2d at 411, 27 P.3d 1149. The LEAP 2 salary figures determine only overall allocations and not individual teacher pay, which is negotiated between the union and district. Even if we affirm the superior court's judgment and the legislature equalized allocation formula salary figures, that would not translate to any individual benefit for the teacher whose salary is determined through negotiation with the school district. The teachers' dispute is therefore hypothetical and nonjusticiable.
¶ 32 Finally, eight of the parent and teacher respondents claim standing as taxpayers because they were unable to pay higher taxes in support of Federal Way School District due to limits on levy authority that are tied to the salary allocations. While taxpayers may have standing to protest high taxes or improper expenditures, this court has said it is doubtful there is taxpayer standing to protest lower taxes or limits on taxation. Walker, 124 Wash.2d at 402, 879 P.2d 920. Moreover, the posture of the parent and teacher respondents' argument is misleading; they do not merely seek to support Federal Way School District. That could be accomplished by bypassing the tax system and voluntarily contributing to the school district directly. Their complaint apparently is that the school district is unable to ask for more taxes from them (and others). A municipal corporation's inability to ask for voter approval of a levy for a specific dollar amount is not a justiciable harm to an individual taxpayer. Moreover, the controversy is hypothetical; there is no evidence that the school district would ask for higher levies. To the contrary, in 2007, the school district sought voter approval for $1 million less than its full levy authority. Since the parent and teacher respondents also lack taxpayer standing for separate claims, none of their claims are justiciable.

*950 CONCLUSION
¶ 33 The legislature's use of the staff unit allocation system to fund education with differing salary allocations to school districts with historically disparate average salaries does not violate article IX, section 2, although there remains a slight gap between the highest and lowest salary funding statewide.[19] There is no showing that the legislature's funding allocations, including those for Federal Way School District, do not constitute "ample provision for the education of all children" as required under article IX, section 1. The legislature has acted well within its constitutional authority and its duty to make ample provision for the education of children and to provide for a general and uniform system of education under article IX. The individual respondents' claims do not meet requirements for justiciability and should be dismissed. Accordingly, we reverse.
WE CONCUR: GERRY L. ALEXANDER, C.J., CHARLES W. JOHNSON, BARBARA A. MADSEN, RICHARD B. SANDERS, TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, and DEBRA L. STEPHENS, JJ.
NOTES
[1] RCW 28A.150.200, amended by Laws of 2009, ch. 548, § 101 (effective until Sept. 1, 2011).
[2] The distribution formula is for determining total funding amounts only and is not intended to prescribe how any individual employee is paid or the number of staff a district may hire. See RCW 28A. 150.260(2)(c) (formula "shall not be construed as mandating specific operational functions of local school districts . . ."), amended by Laws of 2009, ch. 548, § 106 (effective until Sept. 1, 2011).
[3] "Certificated staff" initially included administrative staff and instructional staff, which includes teachers, counselors, librarians, and other nonsupervisory certificated positions. Classified staff included all noncertificated positions. See Laws of 1977, 1st Ex.Sess., ch. 359, § 5. In 1987, the legislature made administrative staff a separate group. The initial figures used for average administrator salary allocations were based on actual average salaries paid during the 1986-87 school year. Consequently, like the average salary amounts adopted in 1977, average salary amounts for administrators varied widely between districts.
[4] Among the groups opposing a uniform statewide salary schedule was the teachers' union, which supported local salary bargaining.
[5] Salary controls, first enacted in 1981, prevented school districts from paying salary increases greater than those authorized in the legislature's funding formula. In 1987, the legislature lifted controls on administrator and classified staff salaries but left teacher salary controls in place. The salary cap amount is taken from the salary tables contained in LEAP Document 2 (LEAP 2), Clerk's Papers (CP) at 266-73; therefore, lower salary allocation figures effectively act as a lower salary cap. See RCW 28A.400.200(3)(a).

LEAP 2 is created by a legislative agency called the "Legislative Evaluation and Accountability Program Committee" (RCW 44.48.010), which is "the Legislature's independent source of information and technology for developing budgets, communicating budget decisions, and tracking revenue, expenditure, and staffing activity." Wash. State Legislative Evaluation & Accountability Program Comm., An Independent Source of Information Technology and a Resource for Fiscal Information, available at http://leap.leg. wa.gov/leap/overview/default.asp (last visited Nov. 4, 2009).
[6] Federal Way School District correctly notes that uniform percentage increases had the effect of widening average salary gaps between school districts if calculated in dollars.
[7] On May 19, 2009, the governor signed Engrossed Substitute House Bill (ESHB) 2261, a 66-page bill that substantially amends laws relating to the program and funding of education. See, e.g., Laws of 2009, ch. 548, § 106 (effective until Sept. 1, 2011) (amending the prescribed student-staff ratios to be used in funding formulas). ESHB 2261 provides that the legislature intends to implement a new instructional program funded by a new funding formula. Laws of 2009, ch. 548, §§ 1, 2. But the sections relating to funding do not take effect until 2011. See ESHB 2261, Laws of 2009, ch. 548 § 804 (providing that sections 101 through 110 become effective Sept. 1, 2011); id. § 112(2) (calling for a "technical working group" to work out the details of new funding formulas). Thus, the amendments in ESHB 2261 do not appear to be of consequence to this case.
[8] The staff mix factors are located in a table called LEAP Document 1. CP at 262-64.
[9] Federal Way School District has access to certain additional sources of funding other than staff unit-based allocations that are not available equally to all districts. First, Federal Way School District has excess levy authority higher than that generally available to other districts. See RCW 84.52.0531, amended by Laws of 2009, ch. 4 (effective Feb. 18, 2009). In 2007, Federal Way School District had levy authority for over $32 million, and sought voter approval for $31 million. Second, a state program entitled Local Effort Assistance, provided an additional $4 million in 2007. See RCW 28A.500.10-.30. The respondents do not contend that disparities between districts created by these alternative funding channels are unconstitutional.
[10] There is no correlation between higher allocation amounts in one category and another; for example, Seattle received the top salary allocation for classified staff but ranks 150th for administrator salary.
[11] These figures have no correlation to the real cost of hiring administrators; the average Federal Way School District administrator makes $94,486.
[12] The superior court did not address justiciability arguments raised by the State. CP at 418-26.
[13] Newspaper editorials at the time of our constitutional convention heavily influenced the debate on the new educational system. See Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1, 149 Wash.2d 660, 672, 72 P.3d 151 (2003) (quoting Quentin Shipley Smith, Analytical Index to THE JOURNAL OF THE WASHINGTON STATE CONSTITUTIONAL CONVENTION 1889, at 685 (Beverly Paulik Rosenow ed., 1999)). We have noted that one such editorial highlighted the "uniformity in charts, manuals, methods, and highly competent instructors" of Australia's common school system. Id. (quoting Tacoma Daily Ledger, July 3, 1889).
[14] Even prior to enactment of the basic education act, this court held that the common school system then in place provided a general and uniform system of public schools. Kinnear, 84 Wash.2d at 729, 530 P.2d 178, overruled on other grounds by Seattle Sch. Dist. No. 1, 90 Wash.2d at 514, 585 P.2d 71.
[15] See also ch. 28A.410 RCW (uniform teacher certification requirements), amended by Laws of 2009, ch. 548, § 402 (effective July 26, 2009) (mandating new uniform teacher performance standards for 2010); ch. 28A.655 RCW (academic achievement and accountability), amended by Laws of 2009, ch. 548, § 202 (effective July 26, 2009) (providing for electronic collection of teacher and student data).
[16] Federal Way School District attempts to distinguish Tunstall because it did not address school funding, but that distinction presumes that article IX, section 2 applies to school funding mechanisms.
[17] Amicus League of Education Voters Foundation supports this argument with its own analysis of article IX, section 2 but cites no additional authority.
[18] Federal Way School District also relies on Brown v. State, 155 Wash.2d 254, 269, 119 P.3d 341 (2005), which echoes the holding in McGowan. Because Brown relies entirely on McGowan for the argument cited, it is not persuasive here.
[19] As previously noted, the gap in teacher funding statewide under the legislature's budget was only 4.9 percent, significantly less than cost-of-living variations between school districts in our state. See WASH. STATE OFFICE OF FIN. MGMT., A REVIEW OF K-12 REGIONAL COST ISSUES app. at A1-A9 (Dec.2000) (statistics showing household expenses in the most expensive school district were 37 percent higher than those in the least expensive district), available at http://www.ofm.wa.gov/ fiscal/k12cola/k12cola.pdf (last visited Nov. 4, 2009).