IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| PAUL HAMAKER, individually and as a putative class representative, and JOSEPHINE HAMAKER, individually and as a putative class representative,<br><br>                                      Appellant,<br><br>        v.<br><br>HIGHLINE MEDICAL CENTER, a Washington non-profit corporation,<br><br>                                    Respondent,<br><br>REBECCA A. ROHLKE, individually, on behalf of the marital community and as agent of non-party Hunter Donaldson; JOHN DOE ROHLKE, on behalf of the marital community; RALPH WADSWORTH, individually, on behalf of the marital community, and as agent of nonparty Hunter Donaldson, JANE DOE WADSWORTH, on behalf of the marital community; TIM CARDA, individually, on behalf of the marital community, and as agent of non-party Hunter Donaldson, JANE DOE CARDA, on behalf of the marital community; GRACIELA PULIDO, individually, on behalf of the marital community and as agent of non-party Hunter Donaldson, JOHN DOE PULIDO, on behalf of the marital community, KIMBERLY WADSWORTH, individually, on behalf of the marital community and as agent of nonparty Hunter Donaldson, and JOHN DOE WADSWORTH, on behalf of the marital community,<br><br>                                    Defendants. | No. 77578-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>FILED: March 25, 2019 |

CHUN, J. — After Paul and Josephine Hamaker (the Hamakers) suffered injuries in a car accident for which they were not at fault, they received medical treatment at Highline Medical Center (Highline). Under an agreement with Highline, Hunter Donaldson, LLC (HD) recorded medical liens on Highline's behalf against the tortfeasor's insurer. After Highline discovered HD had filed improperly notarized liens, it instructed HD to withdraw medical liens previously recorded. HD, however, did not record corresponding lien releases for several years. Prior to the recording of lien releases as to their obligations, the Hamakers settled their personal injury case and paid Highline for their medical bills out of their recovery.

The Hamakers then filed a putative class action complaint against Highline for declaratory and injunctive relief, alleging negligence, fraud, unjust enrichment, and violations of the Consumer Protection Act (CPA).[1] The parties filed cross-motions for summary judgment and the Hamakers additionally filed a motion for class certification. The court granted summary judgment for Highline and dismissed all of the Hamakers' claims for lack of standing. Because the Hamakers raised a genuine issue as to whether they suffered an injury such that they may bring their claims, we reverse.

I.
BACKGROUND

On March 1, 2011, Highline entered a First and Third Party Liability Recovery Service Agreement (the Agreement) with HD. The Agreement allowed

---

[1] The additional defendants (employees of HD) were not involved in the summary judgment dismissal and are not involved in this appeal.

2

HD, on Highline's behalf, to record and collect on medical services liens against third-party tortfeasors responsible for a patient's injuries.

The Hamakers suffered a rear-end vehicular collision on May 30, 2012. Highline treated the Hamakers for injuries sustained in the accident and coded their medical accounts as "01" to indicate they had sought care due to injuries sustained in a motor vehicle accident. Highline charged $542.85 to each of the Hamakers for physician services. The Hamakers paid the charges with their credit card. Although the Hamakers had commercial health insurance with United Healthcare/UMR (UMR), they chose not to give Highline their health insurance information. The Hamakers preferred to pay out of pocket and then seek reimbursement because the accident was another's fault.

Because of the "01" code on the Hamakers' accounts, Highline automatically transferred the accounts to HD for processing and management. On June 27, 2012, HD recorded notices of a claim to a medical services lien. The notices identified the Hamakers as patients and American Commerce Insured (the tortfeasor's insurer) as the tortfeasor. Rebecca Rohlke served as the notary. The Hamakers learned of these notices on June 29, 2012.

Paul[2] called Highline to inquire about the medical services lien on January 15, 2013. Highline directed him to HD. HD told him there was an outstanding bill "for the facility" separate from the previously satisfied bill for

---

[2] For clarity, we refer to Paul and Josephine Hamaker by their first names when individually referenced. We intend no disrespect.

physician services. HD also informed Paul it had filed the lien against the tortfeasor's insurer because it was responsible for his bills.

Throughout 2013, the Hamakers incurred additional accident-related medical expenses from other healthcare providers. These providers submitted the medical bills to UMR, and UMR paid them.

On May 1, 2013, the Notary Public Program of the Washington State Department of Licensing received a complaint that Rohlke had falsely notarized medical liens. Rohlke voluntarily resigned her notary appointment on May 31, 2013.

HD sent two notices of recorded lien claim (one for each of the Hamakers) to the Hamakers' personal injury attorney[3] on April 29, 2014. The notices provided as follows:

> Hunter Donaldson, LLC is the authorized agent of **Highline Medical Center.** NOTICE IS HEREBY GIVEN THAT **Highline Medical Center** claims a lien on any damages that the patient named above may recover. Our Lien was duly executed and recorded. It is your legal obligation to make sure that this lien is paid, if payment is received from any settlement, recovery, and or judgment, pursuant to RCW 60.44.010.

On June 20, 2014, after learning of litigation surrounding Rohlke's false notarizations, Highline directed HD to withdraw all lien claims and to stop executing further claims.

The Hamakers' attorney received two additional letters from HD (again one for each of the Hamakers) on June 26, 2014. The letters stated, "As the duly

---

[3] The Hamakers hired Christopher Williams to represent them in their personal injury claims related to the automobile accident.

4

authorized recovery agent for **Highline Medical Center**, please be advised that our office is withdrawing our lien for medical services rendered to the above-referenced plaintiff." However, HD did not record lien releases at that time.

The facility charges remained on the Hamakers' accounts. The Hamakers received two statements dated July 20, 2014 indicating that they each owed $833 to Highline.

In September 2014, the Hamakers provided proof of UMR as their primary insurer. Highline then billed UMR $833 for each Hamaker. On October 23, 2014, UMR denied both claims as untimely. Highline then wrote off the $833 balance on each account on November 7, 2014.

The Hamakers settled their personal injury case for $16,343.43,[4] and signed releases on March 27, 2015.

On April 20, 2015, the Hamakers directed their attorney to "pay to Highline medical center $1110.72 for our medical bill. I recognize the medical bill is $1660 but [our personal injury attorney] is reducing their fees pursuant to Mahler."[5] Highline received the payment on May 27, 2015 and applied it equally to Paul and Josephine's accounts ($555.36 to each account). Highline wrote off each account's remaining balance.

The Hamakers filed their putative class action complaint on February 4, 2016. The complaint asserted claims against Highline for declaratory and

---

[4] $8,343.43 and $8,000 to Paul and Josephine respectively.

[5] The Hamakers appear to have been referring to Mahler v. Szucs, 135 Wn.2d 398, 957 P.2d 632 (1998), which supports reducing an insurance company's recovery from an insured's settlement for subrogation payments by a pro rata share of an insured's legal costs in obtaining the settlement.

injunctive relief, violations of the Consumer Protection Act (CPA), negligence, fraud, and unjust enrichment against Highline.[6] Each claim arose from HD's lien practices and the false notarization of the liens.

On July 12, 2017, Highline recorded releases for the liens against the Hamakers' recovery.

On August 4, 2017, Highline moved for summary judgment. Highline asserted (1) the Hamakers "lack[ed] standing to challenge the validity of the notices of claim"; (2) the Hamakers could not "present a genuine issue of material fact on the essential element of damages"; and (3) it "is not liable for acts of independent contractor, [HD]."

Also on August 4, 2017, the Hamakers filed two cross-motions for partial summary judgment and a motion for class certification. The first partial summary judgment motion requested the trial court rule that all of the falsely notarized medical services liens filed by HD were invalid as a matter of law. The second sought declaratory relief that the medical services liens were unenforceable due to passage of time. The motion further asked the court to require Highline to "create" releases for the unenforceable liens and pay the fees to file them.

The trial court granted summary judgment in favor of Highline "for lack of standing" on October 27, 2017. That same day, the trial court denied both of the Hamakers' cross-motions for partial summary judgment and their motion for class certification, also for lack of standing. In early 2018, the trial court entered an order granting the Hamakers' motion for CR 54(b) certification and stay of

---

[6] The complaint included additional claims against other defendants.

proceedings regarding its claims against the non-Highline defendants pending appeal.

## II.
## ANALYSIS

### A. Non-CPA Claims

Highline argues the Hamakers lack standing to bring their claims for declaratory and injunctive relief, negligence, fraud, and unjust enrichment. First, with respect to the claim for declaratory relief, Highline contends the Hamakers fall outside the zone of interests of RCW 60.44. Additionally, Highline asserts the Hamakers do not have standing to bring any of their non-CPA claims because they have not demonstrated a cognizable injury. The Hamakers assert they fall within the statute's zone of interests, and were injured by their $1,110.72 payment to Highline from their settlement. We determine the Hamakers have standing to bring their non-CPA claims because they (1) fall within the statute's zone of interests; and (2) have raised a genuine issue of fact as to whether they suffered an injury.

Appellate courts review de novo a grant of summary judgment. Fed. Way Sch. Dist. No. 210 v. State, 167 Wn.2d 514, 523, 219 P.3d 941 (2009). Courts view all reasonable inferences in the light most favorable to the nonmoving party and will grant summary judgment only where there are no genuine issues of material fact such that the nonmoving party is entitled to judgment as a matter of law. Fed. Way Sch. Dist. No. 210, 167 Wn.2d at 523.

The question of standing constitutes a threshold issue that courts review de novo. In re Estate of Becker, 177 Wn.2d 242, 246, 298 P.3d 720 (2013).

The standing doctrine requires a plaintiff to have a personal stake in the outcome of the case to bring a suit. Germeau v. Mason County, 166 Wn. App. 789, 803, 271 P.3d 932 (2012).

1. Declaratory Relief – Zone of Interests

As to the Hamakers' claim for declaratory relief, the Uniform Declaratory Judgment Act (UDJA) requires the plaintiffs to show their "rights, status, or other legal relations are affected by a statute" to have standing. Five Corners Family Farmers v. State, 173 Wn.2d 296, 302, 268 P.3d 892 (2011). The Washington Supreme Court created a two-part test to determine whether a party has standing under the UDJA. Five Corners Family Farmers, 173 Wn.2d at 302. Under this test, the asserted interest must arguably fall within the zone of interests protected or regulated by the statute and the challenged action must have resulted in an injury-in-fact. Five Corners Family Farmers, 173 Wn.2d at 302-03. The party seeking standing bears the burden of proving it has met both elements. Branson v. Port of Seattle, 152 Wn.2d 862, 876, 101 P.3d 67 (2004).

The Hamakers' first claim requests a judicial declaration that HD's lien enforcement practices violated RCW 60.44. They argue their claim falls within the zone of interests protected by RCW 60.44 because it concerns if and how a lien may be secured on their property. Highline asserts the Hamakers' claim falls outside the zone because the statute seeks to regulate tortfeasors and claimants rather than patients.

When determining whether a claim falls within a statute's zone of interests, courts begin by looking at both the operation of the statute and its general purpose. Five Corners Family Farmers, 173 Wn.2d at 304-05. RCW 60.44.010 provides:

> Every operator, whether private or public, of an ambulance service or of a hospital, and every duly licensed nurse, practitioner, physician, and surgeon rendering service, or transportation and care, for any person who has received a traumatic injury and which is rendered by reason thereof shall have a lien upon any claim, right of action, and/or money to which such person is entitled against any tort-feasor and/or insurer of such tort-feasor for the value of such service, together with costs and such reasonable attorney's fees as the court may allow, incurred in enforcing such lien . . . PROVIDED, FURTHER, That all the said liens for service rendered to any one person as a result of any one accident or event shall not exceed twenty-five percent of the amount of an award, verdict, report, decision, decree, judgment, or settlement.

RCW 66.44.020 requires the notice of the lien to include "the name and address of the patient and place of domicile or residence."

Although the medical provider enforces the medical lien against the tortfeasor and their insurer, the payment to the medical provider comes from the funds recovered by the patient. When filing a notice of a medical lien, the medical provider must include the patient's information. Furthermore, the statute protects patients' interest in their claims by limiting the amount recoverable by a lien to 25 percent of the total received by the patient. To be sure, RCW 60.44 both protects and regulates the patient's interest in the funds he or she recovers.

9

As such, we conclude the Hamakers' claim falls within the zone of interests of RCW 60.44.[7]

2. Injury (as to all non-CPA claims)

As to all of the non-CPA claims, the Hamakers are required to prove an injury as either part of the test for standing under the UDJA or as an element for their cause of action.[8] The Hamakers contend they suffered an injury because they paid Highline $1,110.72 due to HD's lien practice and the false notarization. Highline argues the Hamakers paid the money because they chose not to provide Highline with their health insurance information. We determine the Hamakers raise a genuine issue of fact as to whether they suffered an injury.

Viewing the facts in the light most favorable to the Hamakers:

Highline maintained a practice of billing a patient's carrier when the patient had private health insurance. In the absence of a patient's health insurance information, Highline would mark the account as a "self-pay" account and send the patient a letter requesting insurance information.

Here, the Hamakers' account was marked as "self-pay" after they did not provide their health insurance information to Highline. The account was then

---

[7] Highline additionally argues RCW 60.44 does not create a private right of action for a patient to seek redress where a lien holder has not sought to enforce the lien. But the Hamakers do not assert a private right of action under the statute. Rather, their claims derive from the UDJA, CPA, and common law. Accordingly, the absence of a private right of action under RCW 60.44 does not impede their claims. See Nelson v. Appleway Chevrolet, Inc., 160 Wn.2d 173, 187, 157 P.3d 847 (2007) ("no additional private right of action is necessary for parties to seek a declaratory judgment whenever their rights are affected by a statute").

[8] Five Corners Family Farmers, 173 Wn.2d at 302 (injury-in-fact required for declaratory relief); Alhadeff v. Meridian on Bainbridge Island, LLC, 167 Wn.2d 601, 618, 220 P.3d 1214 (2009) (injury required for negligence claim); Adams v. King County, 164 Wn.2d 640, 662, 192 P.3d 892 (2008) (injury required for fraud claim); Lynch v. Deaconess Med. Ctr., 113 Wn.2d 162, 165-66, 776 P.2d 681 (1989) (unjust enrichment claim requires plaintiff to prove a party recovered more than it was owed).

transferred to HD because Highline's code indicated the injuries arose from a motor vehicle accident. Instead of requesting health insurance information from the Hamakers when the bill for the facility fees arose, Highline immediately recorded medical liens. The Hamakers did not know they owed facility fees until they received the notice of the liens.

Neither Highline nor HD ever asked the Hamakers if they wanted the facility fees to be paid by their health insurer. Although the Hamakers used their credit card to pay the physician fees, they did not know of the facility fee at that time. Moreover, while the Hamakers originally chose to pay the physician fees out of pocket, they sent several other medical bills stemming from the accident to their insurer. Accordingly, filing the lien without first notifying the Hamakers that they owed money forced them to pay Highline out of their settlement. Thus, HD's decision to file a medical lien before informing the Hamakers of the facility fees deprived them of the choice to have their health insurer pay for the fees.

The foregoing raises a genuine issue of fact as to whether the Hamakers suffered an injury as a result of the alleged wrongful conduct. Accordingly, the trial court erred by dismissing the Hamakers' non-CPA claims on the ground that they lacked standing.

B. CPA Claims

The Hamakers assert they suffered multiple CPA injuries. Specifically, they point to (1) the $1,110.72 paid to Highline; (2) a decision to not refinance their home; and (3) the failure to record lien releases. Highline again claims the Hamakers did not suffer any injury caused by the liens. We agree with the

11

Hamakers and conclude they raise a genuine issue of material fact as to the injury element of their CPA claim.[9]

The CPA provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020. For a plaintiff to bring a claim under the CPA, he or she "must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." Panag v. Farmers Ins. Co. of Washington, 166 Wn.2d 27, 37, 204 P.3d 885 (2009), (citing Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784, 719 P.2d 531 (1986)).

A plaintiff meets the injury element if they prove the unlawful conduct diminished a business or property interest, even if the injury is minimal. Panag, 166 Wn.2d at 57. Unquantifiable damages, such as loss of goodwill or delay in receiving money, may also satisfy the element. Panag, 166 Wn.2d at 58. When the claimed injury is the payment of money, "The issue is whether the plaintiff was wrongfully induced to pay money on a debt not owed or to incur expenses that would not otherwise have been incurred." Panag, 166 Wn.2d at 62 (internal quotation omitted).

Again, viewing the evidence in the light most favorable to the Hamakers, HD's lien practices caused them to pay for certain medical bills out of their

---

[9] The Hamakers correctly note in their briefing that under Washington law standing is not a separate requirement for demonstrating a valid CPA claim. See Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37-38, 204 P.3d 885 (2009). The trial court granted summary judgment to Highline based on a lack of standing. But presumably, the trial court determined the CPA claim failed to meet the injury element; the court stated its primary concern was injury.

settlement instead of having their insurance pay for them. Thus, when viewing the evidence in the light most favorable to the Hamakers, they demonstrated they incurred costs they otherwise would not have. This raises a genuine issue as to whether the Hamakers suffered an injury under the CPA.[10]

Because the Hamakers demonstrated HD's lien practices raised a genuine issue as to whether they suffered an injury as to both the non-CPA and CPA claims, we reverse the trial court's order granting summary judgment for Highline and denying partial summary judgment and class certification for the Hamakers. Because the trial court based its decisions solely on its conclusion that plaintiffs lacked standing and failed to raise an issue of fact as to injury—and this opinion limits its discussion to only those issues—our reversal is without prejudice as to other arguments raised by the parties in their motions below.

Reversed.

_Chun, C.J._

WE CONCUR:

_Andrus, J._                    _Leach, J._

---

[10] Because we determine the Hamakers' payment to Highline constituted an injury under the CPA, we do not address their other theories of injury.